**ROSENTHAL & COMPANY, etc.,**
**Plaintiff-Appellant,**

v.

**William T. BAGLEY et al.,**
**Defendants-Appellees.**

No. 77–1635.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 1978.
Decided Aug. 10, 1978.

Lawrence C. Rubin, Chicago, Ill., for plaintiff-appellant.

Joanne Leveque, Asst. Gen. Counsel, John G. Gaine, Gen. Counsel, Richard E. Nathan, Deputy Gen. Counsel, Frederic T. Spindel, Associate Gen. Counsel, Susan A. Arnold, Commodity Futures Trading Commission, Washington, D. C., for defendants-appellees.

Before PELL and TONE, Circuit Judges, and GRANT, Senior District Judge.*

TONE, Circuit Judge.

Section 14 of the Commodity Futures Trading Commission Act of 1974, 88 Stat. 1389, 1393 (1974), 7 U.S.C. § 18, confers on the Commission the authority to adjudicate reparations claims brought by members of the public against registered commodities brokers and certain other registered persons. Upon finding a violation of the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.*, the Commission may make an award of damages enforceable in a federal district court, where it is to be considered final and conclusive, 7 U.S.C. § 18(f). Direct review of the Commission's order is available in a court of appeals. 7 U.S.C. § 18(g).

Plaintiff, a registered commodities brokerage firm defending approximately 25 of these reparations proceedings before the Commission, brought this action in the District Court against the Commission and its members to enjoin the administrative proceedings on the ground that the statutory scheme violates the Seventh Amendment by abridging the right to jury trial in civil cases. Plaintiff's position is that the reparations claims are "suits at common law" within the meaning of the Seventh Amendment and are therefore subject to the guarantee of trial by jury.

The District Court denied preliminary injunctive relief and, on the defendants' motion, dismissed the action, holding that, because the plaintiff could present its claim of unconstitutionality to the court of appeals in a direct review of the administrative proceeding under 7 U.S.C. § 18(g), declaratory or injunctive relief interrupting the administrative proceedings was unavailable. We agree, and affirm the judgment.

It is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). We have applied this rule in a variety of

---

* The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

contexts in recent years, *e. g., Frey v. Commodity Exchange Authority,* 547 F.2d 46, 49–50 (7th Cir. 1976); *Borden, Inc. v. FTC,* 495 F.2d 785, 788–789 (7th Cir. 1974); *Grutka v. Barbour,* 549 F.2d 5 (7th Cir.), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977); *Squillacote v. International Brotherhood of Teamsters (Teamsters I ),*[1] 561 F.2d 31, 37–40 (7th Cir. 1977); *Uniroyal, Inc. v. Marshall,* 579 F.2d 1060 (7th Cir. 1978), and have recognized only narrow exceptions, *e. g., Jewel Companies, Inc. v. FTC,* 432 F.2d 1155 (7th Cir. 1970); *cf. FTC v. Miller,* 549 F.2d 452, 460–462 (7th Cir. 1977).

■ The exhaustion doctrine retains its vitality even when the collateral judicial action challenges the constitutionality of the basic statute under which the agency functions, even though one frequently asserted reason for requiring exhaustion, *viz.,* to give the agency an opportunity to avoid or correct error, is inapplicable because an agency will not ordinarily pass on the constitutionality of the statute under which it operates.[2] In Professor Kenneth Culp Davis' discussion of the applicability of the exhaustion doctrine in this context, 3 K. Davis, *Administrative Law* § 20.04 (1958), and 1970 Supp. § 20.04, he demonstrates the difficulty of finding definitive guidance from the decisions of the Supreme Court. Although *Public Utilities Commission of California v. United States,* 355 U.S. 534, 539–540, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958), and *Chicago v. Atchison, T. & S. F. R. Co.,* 357 U.S. 77, 89, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958), tend to support plaintiff's position here, the latest decision on the point, *W.E.B. DuBois Clubs of America v. Clark,* 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967), applied the exhaustion requirement,

relying on the reviewability of the ultimate administrative determination in the court of appeals and the desirability of deciding constitutional questions in a factual context and after a determination that plaintiffs were covered by the statute. An earlier decision, antedating *Public Utilities Commission of California* and *Chicago,* gave controlling weight to the possibility that the disposition by the administrative tribunal may make decision of the constitutional question unnecessary. *Aircraft & Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 772, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947).

Several decisions of this court, discussed in *Teamsters I, supra,* 561 F.2d at 38–40, have applied the exhaustion doctrine even though a constitutional ground is asserted as the basis for enjoining a proceeding before the National Labor Relations Board. In that case we refused to permit assertion in a collateral action of a claim that a provision of the underlying statute on which the lawfulness of the plaintiff's conduct depended was unconstitutional, because plaintiff had not shown a clear violation of a constitutional right or that its constitutional claim could not be judicially determined if an exception to the exhaustion requirement were not allowed. In *Frey, supra,* 547 F.2d at 49–50, we applied the exhaustion doctrine to a proceeding under § 6(b) of the Commodity Exchange Act, as amended, 7 U.S.C. § 9, before the Secretary of Agriculture, to whose functions in this area the defendant Commission has succeeded, and we refused to entertain the claim that denial of discovery contravened the plaintiff's constitutional right to due process in a collateral action aimed at halting the administrative proceeding unless and until discovery was afforded.

---

1. In *International Brotherhood of Teamsters v. NLRB,* 568 F.2d 12 (7th Cir. 1978) (*Teamsters II*), the constitutionality question was raised and decided in a direct review by this court of the Board's final order.

2. See *Public Utilities Commission of California v. United States,* 355 U.S. 534, 539, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). We said in *Teamsters I* that "an administrative agency is generally considered powerless to adjudicate the constitutionality of its governing statute." 561

F.2d at 38. Although the Commission implies in its brief in the case at bar that it would consider itself free to hold the statute unconstitutional, an administrative law judge has held that the issue of the constitutionality of the reparations procedure provided by § 14 cannot be decided in the administrative proceeding. *Wagner v. London Commodity House, Inc.,* CFTC Dkt. No. R 77–201, Commodity Futures Law Rep. (CCH) ¶ 20,469 (1977).

We find no principled basis for distinguishing *Teamsters I* or *Frey* from the case at bar. Essentially the same kind of ultimate review of a final agency order by the court of appeals is provided for in the basic statutes involved in the three cases, § 10(e) and (f) of the Labor-Management Relations Act in *Teamsters I*, § 6(b) of the Commodity Exchange Act in *Frey*, and § 14(g) of the Act now before us.

In both *Teamsters I* and *Frey* it would arguably have been more efficient to have adjudicated the constitutional questions collaterally,[3] as it would be in the case at bar. Countervailing considerations, however, were viewed as having greater weight. The final administrative determination may be favorable to the plaintiff, in which case the constitutional issue sought to be decided collaterally would become moot and no court would have to decide it. *See Frey, supra,* 547 F.2d at 49. Halting or delaying an administrative proceeding whenever a party is able to allege a constitutional question that is not frivolous would intolerably interfere with the agency's performance of its assigned task and with the pursuit of the administrative remedy granted by Congress. *See Teamsters I, supra,* 561 F.2d at 38–39. It is therefore preferable, we have held, to allow the agency to proceed to a final determination and let the judicial determination of the constitutional question await the judicial review of the final agency action.

■ An exception has been recognized in our cases, whether the asserted right is based on the Constitution, statute, or regulation: When the agency would violate a clear right of the plaintiff if allowed to proceed, the court will intervene. *See Teamsters I,* 561 F.2d at 40; *Frey,* 547 F.2d at 49–50; *Uniroyal, Inc. v. Marshall, supra,* 579 F.2d at 1066–1067; *cf.* also *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).

■ We do not view this case as falling within the clear-right exception. To reach that conclusion we need go no further than *Atlas Roofing Co. v. Occupational Safety and Health Review Commission,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977), which contains a comprehensive review and evaluation of the authorities dealing with the scope of the Seventh Amendment's limitation on Congress' power to commit dispute determination to administrative tribunals. That the Seventh Amendment prevents the relegation of reparations claims to the Commodity Futures Trading Commission is arguable but far from clear. At least when only "public rights" are involved, Congress may provide for administrative fact finding, *see* 430 U.S. at 450, 452, 456, 458, 460, 97 S.Ct. 1261, with which a jury trial would be incompatible. *Id.* at 450, 455, 97 S.Ct. 1261. And the fact that new statutory "public rights" are enforceable in favor of a private party does not mean they cannot be committed to an administrative agency for determination. *Id.* at 452, 453, 454–455, 97 S.Ct. 1261. Moreover, "the right to a jury trial turns not solely on the nature of the issue to be resolved but also on the forum in which it is to be resolved." *Id.* at 460–461, 97 S.Ct. at 1271.

Without citation of any authority, plaintiff also argues that § 14(a) violates a right conferred by Article III of the Constitution to have the reparations claims against it determined exclusively in a judicial forum. Congress' power to commit statutorily created claims to administrative agencies for initial determination has repeatedly been recognized. *See Atlas Roofing, supra,* 430 U.S. at 453, 97 S.Ct. 1261. We think this point is not even arguable, *see Palmore v. United States,* 411 U.S. 389, 399–404, 407–408, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973),[4]

---

**3.** In *Teamsters I* an adjudication of unconstitutionality would have effectively terminated the administrative proceeding by destroying the legal theory on which the Board's General Counsel was proceeding. In *Frey* an adjudication of unconstitutionality would have led to either the abandonment of the administrative proceeding against the plaintiff or affording him discovery in that proceeding prior to the administrative adjudication.

**4.** Essentially the same argument was made and rejected *sub silentio* in *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 20, 46–48, 57

but, at least plaintiff has not shown a violation of a clear right. As to both asserted constitutional infirmities, then, as in *Teamsters I*, "it is at least less than clear that the [plaintiff's] argument will ultimately be accepted by the Supreme Court." 561 F.2d at 40.

 Finally, the number of reparations claims asserted against plaintiff before the agency does not require a different result. Twenty-five claims may present fewer litigation difficulties than a single complex claim. "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974), quoted in *Frey*, 547 F.2d at 49.

The judgment of the District Court is accordingly affirmed.

AFFIRMED.

S.Ct. 615, 81 L.Ed. 893 (1937). *See also* Hart and Wechsler's *The Federal Courts and the* *Federal System* 396, *et seq.* (Bator, *et al.*, ed. 1973).