591 F.2d 1234
 Nelson Bunker HUNT, W. H. Hunt, Ellen H. Flowers, Mary H.
Huddleston, Elizabeth H. Curnes, Houston B. Hunt,
Douglas H. Hunt, and Hunt Holdings,
Inc., Plaintiffs-Appellants,
v.
COMMODITY FUTURES TRADING COMMISSION, Defendant-Appellee.
 No. 78-1055.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 26, 1978.
Decided Jan. 8, 1979.
 
 A. B. Conant, Jr., Dallas, Tex., for plaintiffs-appellants.
 Frederic T. Spindel, Associate Gen. Counsel, Washington, D. C., for defendant-appellee.
 Before SWYGERT, Circuit Judge, MARKEY, Chief Judge,[1] and TONE, Circuit Judge.
 SWYGERT, Circuit Judge.
 
 
 1
 The principal question before us is whether parties involved in administrative proceedings before the Commodity Futures Trading Commission must exhaust their administrative remedies prior to seeking judicial review of the Commission's authority to bring the administrative action when the Commission has previously brought a similar, court enforcement action against the same parties. We hold that administrative remedies must be exhausted and sustain the district court's denial of the appellants' motion for a preliminary injunction halting the administrative proceedings.
 
 
 2
 On November 28, 1977 the Commodity Futures Trading Commission instituted administrative proceedings against seven members of the Hunt family and an affiliated company for violating the speculative trading limits for soybean futures set by the Commission pursuant to section 4a(1) of the Commodity Exchange Act, 7 U.S.C. § 6a(1) (1976). The transactions that constitute the factual basis for the Commission's action are chronicled in a companion case decided today. Commodity Futures Trading Comm. v. Hunt, 591 F.2d 1211 (7th Cir. 1978) ("Hunt I ").[2] In that case the Commission brought an action in the United States district court based on the same violations of law involved in the administrative proceedings, but seeking different relief. 7 U.S.C. § 13a-1. The district court found that the Hunts had violated provisions of the Commodity Exchange Act, but denied the Commission's motions for an injunction and ancillary relief. Commodity Futures Trading Comm. v. Hunt, No. 77-C-1489 (N.D.Ill., Sept. 28, 1977). On appeal we upheld the trial court's conclusion that the Hunts had violated the statute. We reversed, however, the trial court's denial of injunctive and ancillary relief and remanded those issues for proceedings not inconsistent with our opinion. Hunt I, supra.
 
 
 3
 On December 13, 1977 the Hunts filed a complaint in support of their request that the district court enjoin the administrative proceedings before the Commodity Futures Trading Commission. At a hearing held December 14, the district court denied the Hunts' request for a temporary restraining order. On December 23, 1977 the district court denied their motion for a preliminary injunction.
 
 
 4
 On appeal the Hunts offer several grounds for their contention that the administrative proceedings should be enjoined. Most importantly, the Hunts argue that because the Commission previously decided to bring an enforcement action in district court, it is barred from initiating administrative proceedings pursuant to section 6(c) of the Act. 7 U.S.C. § 13b (1967). They also contend that the Commission has violated its own discovery rules by adopting the evidentiary record developed in the district court for use in the administrative proceedings. None of the arguments advanced by the Hunts, however, is sufficient to overturn the deference courts ordinarily extend to ongoing administrative proceedings.
 
 
 5
 Judicial review of administrative actions of the Commodity Futures Exchange Commission is provided for in section 6(b) of the Commodity Exchange Act, 7 U.S.C. § 9 (1976). See Frey v. Commodity Exchange Authority, 547 F.2d 46, 49 (7th Cir. 1976).[3] The Hunts can present their claims regarding the illegitimacy of the Commission's actions for judicial review after the completion of the administrative process and the entry of a Commission order. Absent special circumstances, the courts will not provide declaratory or injunctive relief interrupting administrative proceedings.
 
 
 6
 It is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). See also, e. g., Rosenthal & Co. v. Bagley, 581 F.2d 1258 at 1259 (7th Cir. 1978). Squillacote v. International Brotherhood of Teamsters (Teamsters I), 561 F.2d 31, 37-40 (7th Cir. 1977); Grutka v. Barbour,549 F.2d 5 (7th Cir.), Cert. denied, 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977); Frey, supra at 49-50. This rule prevents courts from precipitously reviewing cases which, if the administrative process is allowed to run its course, may result in determinations favorable to a petitioner, thereby rendering his objections moot. See Rosenthal, supra at 1261; Frey,supra at 49. Awaiting the conclusion of the administrative proceedings also insures that a record will be developed including conclusions reached by the agency in its area of expertise which can facilitate judicial review. See Teamsters I, supra at 39. And the exhaustion doctrine curbs frequent, litigious interference with the administrative procedures established by Congress for achieving the agency's goals. Rosenthal, supra at 1261; Teamsters I, supra at 38-39.
 
 
 7
 The exhaustion doctrine, of course, is not absolute. There are exceptional circumstances in which courts will interrupt administrative proceedings. The Hunts argue that their claims fall within such an exception to the exhaustion requirement. One exception, long recognized by the courts, is the "clear right" exception: if an agency would violate a clear right of a petitioner by disregarding a specific and unambiguous statutory, regulatory, or constitutional directive, a court will not require the petitioners to exhaust his administrative remedies and will intervene immediately. Rosenthal, supra at 1261; Teamsters I, supra at 36. See Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).
 
 
 8
 The Hunts, however, have failed to establish that the Commission has violated a "clear right." Neither the Commission's decision to institute administrative proceedings after its previous enforcement efforts before the district court nor its incorporation of the record of the civil action into the administrative proceedings constitute such a violation. There is nothing in the statutory language of the Commodity Exchange Act which indicates that the Commission's initial election of remedies is exclusive, and the legislative history provides little support for the Hunts' position. See, e. g., H.R.Rep.No.95-1181, 95th Cong., 2d Sess. 51 (1978). The Hunts' allegations regarding the Commission's disregard of its own discovery rules also fail to demonstrate that the Commission has violated a clear right. When the implications of one of an agency's own rules is in question, a court should be hesitant to conclude that the agency has disregarded a specific and unambiguous directive warranting judicial intervention in the administrative proceedings. See Borden, Inc. v. FTC, 495 F.2d 785, 789 (7th Cir. 1974). And while the Commission's discovery procedures are limited, there is nothing in the Commission's rules explicitly prohibiting the incorporation of evidence compiled in a prior judicial proceeding. See Also 17 C.F.R. § 10.42(b) (1977). Thus the "clear right" exception does not apply.
 
 
 9
 The Hunts also contend that the instant case comes within other exceptions to the exhaustion doctrine. One other exception applies to cases in which judicial review effectively will be foreclosed if the court does not intervene in the administrative proceedings. See Jewel Companies, Inc. v. FTC, 432 F.2d 1155 (7th Cir. 1970). In the instant case, however, the Hunts will have an opportunity to assert their claims, if necessary, in an appeal from the Commission's final order. 7 U.S.C. § 9 (1976).
 
 
 10
 The Hunts also argue that the only questions at issue in their appeal are matters of law, not of fact, and therefore the exhaustion requirement does not apply. This argument can be disposed of without determining whether any factual disputes are at issue in the Hunts' appeal. The supposed doctrine which the Hunts employ to advance their position has been explicitly rejected by this court. In Teamsters I, supra at 39, we said that the conclusion that a dispute was a "matter of law" would be insufficient in and of itself to trigger an exception to the exhaustion requirement. See also Rosenthal, supra. In the instant case, where no clear right has been violated and judicial review will be available to the petitioners in accordance with the statutory framework of the Commission's proceedings, the exhaustion requirement applies.
 
 
 11
 The judgment of the district court accordingly is affirmed.
 
 
 12
 MARKEY, Chief Judge, dissenting.
 
 
 13
 With the greatest respect, I dissent from what I consider an unwarranted abdication of the judicial role. It is not too strong to say that application of the exhaustion doctrine in this instance obscures, if it does not obliterate, the line between judicial deference and judicial surrender.
 
 
 14
 Citing no compelling reason whatever for having instituted an administrative proceeding on the same facts and allegations pending before this court, the Commission says the courts are rendered powerless to enjoin that proceeding by the exhaustion doctrine. That doctrine is of a piece with efforts extant for centuries to avoid multiple litigation. Repeated litigation in the courts is resisted by rules like Res judicata and collateral estoppel. Simultaneous litigation on the same facts and allegations, the evil occurring here, is resisted in the courts by rules like those concerning venue, transfer, "forum non conveniens," class actions, consolidation and the Panel on Multi-district Litigation. Nonetheless, the Commission says it, and impliedly all similar executive agencies, can do what courts can't and won't do, I. e., conduct simultaneous litigation, because Congress gave it punishment powers not within the arsenal of the courts, arguing thus that Congress intended the incongruous.
 
 
 15
 The exhaustion doctrine is salutory. Ordinarily, action is initiated and proceeds in orderly fashion to completion within the agency. Withholding of judicial intervention well serves the twin goals of uninterrupted agency action and saving of scarce judicial resources. Judicial involvement may be obviated. If not, judicial review can be conducted on a complete record. The authorities cited by the parties, including those establishing properly limited exceptions to the doctrine, stand unchallenged and insure the continued viability of the doctrine in appropriate cases. Those authorities are of little comfort here, however, where to apply the doctrine is to turn it on its head, to judicially approve interrupted agency action, to accept Agency review of Judicial action, to endorse regulatory end-runs around the justice system, and to judicially countenance an administrative abuse of the judicial process.
 
 
 16
 Chronology supplies the key to what is happening here. The Commission elected to fully employ the judicial process, filing its complaint for plenary, not merely preliminary, relief in the district court in April 1977.[1] The district court having expended substantial resources, and having necessarily deprived others seeking a share of those same limited resources, rendered a final judgment in September, 1977. The Commission and the defendant both appealed from that judgment. The Commission, however, in November, 1977, After the final order of the district court and While the appeal was pending in this court,[2] instituted an administrative proceeding against the same defendants, on the same facts and making the same allegations of statutory violations, as were and are involved in the judicial process which the Commission initiated and which is Still ongoing.
 
 
 17
 Presumably, the Commission conducted some sort of investigation before availing itself of the resources of the district court. It conducted full discovery on all issues before the court. Unwilling to await the decision of this court;[3] I. e., to await an orderly completion of the judicial process, the Commission elected to conduct its investigative function all over again, albeit under the formal label "administrative proceeding." Obviously dissatisfied with the outcome in the district court, and uncertain of the outcome here, the Commission has, in effect, constituted itself a quasi-appellate tribunal, prepared to grant itself relief not obtained in the district court. In so electing, the Commission is thus conducting a disjointed, interrupted and repetitive investigation, one of the evils sought to be prevented by the exhaustion doctrine. At the same time, in asserting that this court may review the present administrative proceeding at some future date, the Commission exhibits a willingness to unnecessarily expend judicial resources, the other evil sought to be prevented by the exhaustion doctrine.[4]
 
 
 18
 The denigration of the courts exhibited by the Commission's actions is repeated in its brief. In asserting a naked "right" to institute its administrative proceeding, on the same facts and allegations involved in the judicial process it initiated, and during the course of that judicial process, the Commission's words reflect an attitude perhaps subliminal, but uncomfortably close to contempt for the courts as mere agency appendages.
 
 
 19
 First, the Commission relies on the familiar rule that a district court's denial of an injunction is discretionary, not to be disturbed absent abuse. Yet the Commission vigorously attacks the same court's denial of the injunction in Hunt I, and its administrative proceeding looks to its own issuance of a cease and desist order, an effective overruling of the district court's denial of the injunction it sought through the judicial process in Hunt I.
 
 
 20
 Quite apart from honoring the judicial discretion to deny an injunction it praises in this case, the Commission is prepared to ignore it in its administrative proceeding, for all the world as though the district court had never spoken. The Commission vigorously relied on the collateral estoppel effect of the district court trial in successfully resisting appellants' motion to dismiss its administrative proceeding; it tells this court that the district court trial has no collateral estoppel effect. Further, the agency is prepared to issue a cease and desist order in the face of this court's potential affirmance of the district court's injunction denial, as though the judicial process in which this court is presently involved were a nullity.
 
 
 21
 Next, the Commission praises the exhaustion doctrine (citing cases and language applicable to the ordinary situation in which an effort is made to involve the courts in action initiated within an agency), as precluding "premature" judicial review, as though all of the facts, allegations and law involved in its administrative proceeding were not Already under judicial review.
 
 
 22
 It is at best fatuous to assert, as does the Commission: "But, if the administrative process is allowed to go to completion, the Hunts might prevail on their motion to dismiss or on the merits or might otherwise persuade the Commission that remedial sanctions are inappropriate. In any of those events, the courts would never have to become involved." Yet the courts are already fully involved with the entire case, and at the behest of the Commission. Moreover, the Commission has made the district court's violation finding of record in its administrative proceeding. Whether appellants' allegation that the Commission is engaged in an administrative vendetta be true or false,[5] the Commission's assertion that it might disregard the violation finding is but another illustration of a willingness to pretend that the district court action (and ours) never occurred.
 
 
 23
 That the Commission intends to constitute itself an appellate tribunal over the district court is stated unequivocally in its brief: "Even if the administrative law judge should deny the Hunts' motion to dismiss the proceeding and should render an initial decision adverse to them, they may seek review by the Commission. At that time the Commission, upon an independent review of the administrative record, can Consider each of the claims that the Hunts have Asserted in the court below. To the extent that plaintiffs may demonstrate the merits of their claims and that Prejudicial errors (Query: by the district court? by this court?) have therefore been made, the Commission will have the opportunity to Rectify them and will presumably do so." (Emphasis added.)
 
 
 24
 The Commission dismisses concern over conflict between actions it might take in its administrative proceedings, and those consistent with this court's decision and opinion on appeal, with: "It will be soon enough for a court of appeals to consider the matter, when and if a conflict should arise between what this court has said and what the Commission has done." Surely the apparent arrogance, expressed with such amazing aplomb, is unintended. This "court of appeals" is Now considering the entire "matter" at the behest of the Commission. I find no basis, in law or policy, for a Commission "right" to act in the interim, in potential contravention of the courts' decisions, and then to require this court to "consider the matter" a second time.
 
 
 25
 A decent respect for the courts would appear to preclude concurrent conduct of both judicial and administrative processes on the same facts and allegations in this case.[6] In the pending appeal (Hunt I), this court may (1) affirm or reverse the declaratory finding of a violation; (2) affirm or reverse the district court's denial of an injunction, and (3) remand for further consideration of injunctive relief, disgorgement of profits, liquidation of excess positions, and "other" relief originally and Presently sought from the courts by the Commission. Yet the Commission, in its simultaneous administrative proceeding, may have by that time barred defendants from the commodity markets, imposed civil money penalties, and applied what its brief calls "criminal" sanctions, rendering our decision in Hunt I superfluous.
 
 
 26
 It would appear at least as important to the integrity of the judicial process to require the exhaustion of judicial remedies, as it is important to the integrity of the regulatory process to require the exhaustion of administrative remedies. Indeed, a reasonable regard for the exalted exhaustion doctrine would appear to require the Commission to stay its administrative hand, or, if there be a compelling reason to proceed (and none is of record), then to abandon and undo its self-initiated judicial proceeding.
 
 
 27
 I had not till now thought that anyone would consider deference a one-way street, i. e., that only the judiciary should defer. Nor would I think unholy a requirement that an administrative agency, after initiating full court action, should defer acting on the same facts and allegations until the judicial process be completed. It would not, I think, destroy some "vast eternal plan" if deference, under the non-emergency circumstances here, were a two-way street.
 
 
 28
 If the agency continues its administrative proceeding, I cannot see why this court should bother deciding Hunt I. I seek not alone to make the judicial job in Hunt I easier, however, but to make it meaningful. As matters now stand, we are irrelevant.
 
 
 29
 Perhaps even more importantly, the Commission's brief mirrors the movement toward a self-generated "executive judiciary," with powers not merely equal to but greater than those of the courts established by Article III of the Constitution. The Commission dismisses the contention that it is violating the separation of powers doctrine solely on the assertion that it has remedial powers not available to the courts. In confusing its remedial powers with a naked right to independent, simultaneous determination of substantive rights on the same facts currently before this court, the Commission demonstrates that we deal here not merely with agency exuberance, but with agency exhaltation.[7]
 
 
 30
 Reminding us that the Supreme Court has long recognized quasi-judicial authority in administrative agencies, the Commission meets the argument that its administrative proceeding will impede the ability of the district court and this court to expeditiously resolve the substantive rights of the parties in Hunt I with this: "Of course, this argument erroneously assumes that all 'the substantive rights of the parties' were in issue before the district court in the injunctive case (Hunt I) and could be decided (Sic ) by that court. To the contrary, however, if violations should be found (Sic, they Were by the district court, and are at issue before this court) only the Commission may lawfully decide (Sic ) whether the Hunts may enjoy the privilege of further participation in the futures markets and whether civil money penalties should be imposed."[8]
 
 
 31
 Leaving unmentioned the prayer in its complaint for "such other further relief as the court may deem necessary and proper under the circumstances," the Commission says this:
 
 
 32
 In the district court, the Commission sought those forms of equitable relief expressly contemplated under Section 6c of the act preliminary and permanent injunctions against further violations of the Act as well as ancillary equitable relief requiring liquidation of unlawful positions and disgorgement of any profits derived from unlawful activity. In contrast, the administrative proceeding has been instituted to determine whether an order should be entered by the Commission disqualifying the Hunts from trading on contract markets for a period of time, assessing civil money penalties against them and directing them to cease and desist from unlawful activity. The imposition of these remedial sanctions are expressly entrusted exclusively to the Commission and not to a court under Sections 6(b) and 6(c) of the Act.
 
 
 33
 and this:
 
 
 34
 Federal district courts possess only such power as is expressly conferred by statute or is traditionally inherent in a court of equity. The Act provides no authority to a district court to grant the remedies that may be applied by the Commission in the administrative case and remedial sanctions of these kinds are not within the traditional equity jurisdiction of a district court.[9]
 
 
 35
 Though the Commission cites no supporting judicial authority, and no statutory language so stating, it says that disqualification from trading, assessment of a civil money penalty and a cease and desist order, "could not be granted in the injunction action," and "could not have been considered in a court forum."[10] It distinguishes Williamson v. Columbia Gas and Electric Co., 186 F.2d 464 (3rd Cir. 1950) (barring relitigation in court on the same wrong and facts even when brought under a different statute), on the sole ground that the recovery sought was there the same, and the remedies it here intends are "different."
 
 
 36
 Continuing to ignore its request to the court for "other" relief, the Commission says that in Hunt I the district court was "not requested to consider administrative sanctions," that it "did not purport to do so in its order," and that it "lacked jurisdiction to entertain such claims for relief."[11] The Commission's statement flies in the face of its own enabling statute, which provides, "Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." 7 U.S.C. § 2. Moreover, the assumption that regulatory agencies may limit the jurisdiction of a court presented with the entire case, by merely tailoring their prayers for relief, leaving the agencies free to conduct simultaneous litigation on the same facts and allegations, is at best monstrous. Only a little less ludicrous is the suggestion that solely because appellate courts have the power to approve or disapprove agency imposition of penalties, a district court could not grant, on a proper showing, an agency request for district court imposition of those penalties determined appropriate by an agency, particularly in light of the language of the very section (6c, now 7 U.S.C. § 13a-1) relied on by the Commission: "Upon application of the Commission, the district courts * * * shall also have jurisdiction to issue writs of mandamus, or orders affording like relief, commanding any person to comply with * * * any * * * order of the Commission."
 
 
 37
 The Commission's reliance on its remedial powers, as a basis for its absolute right to disregard an on-going judicial process involving the same facts and allegations, ignores the necessity for determination that there be something to be remedied and that the remedy be consonant with the wrong.[12] Those determinations have been made by the district court and are under consideration in this court, yet the Commission insists on making those determinations simultaneously and independently. It is difficult to visualize a more invidious invasion of the constitutional construct variously labeled as "The Federal Judiciary," the "Third Branch," and "Article III," or of the governmental scheme expressed as the "separation of powers" doctrine.
 
 
 38
 If the majority remains reluctant to enjoin the continuation of the administrative proceeding, and feels compelled to defer to the Commission, I would respectfully recommend that it defer fully; that it cease the charade in which the court defers on the one hand (Hunt II) to an administrative process, and on the other hand (Hunt I), continues to conduct a potentially wasted judicial process on the same facts and allegations.
 
 
 39
 If it must defer, the court should (1) terminate instanter all further judicial process in Hunt I and Hunt II, (2) vacate the judgments below in both cases in their entireties, (3) order that the Commission's original complaint be dismissed as prematurely brought, and (4) order that the trial record in Hunt I be expunged. Only those steps, it seems to me, would enable the court in these cases to preserve deference with dignity.
 
 
 
 [1]
 The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, sitting by designation
 
 
 [2]
 The record from the three appeals consolidated for hearing in Hunt I was made part of the record in this case in April 1978
 
 
 [3]
 Section 6(b), 7 U.S.C. § 9 (1976), states in relevant part:
 After the issuance of the order by the Commission, the person against whom it is issued may obtain a review of such order or such other equitable relief as to the court may seem just by filing in the United States court of appeals of the circuit in which the petitioner is doing business a written petition, within fifteen days after the notice of such order is given to the offending person praying that the order of the Commission be set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Commission and thereupon the Commission shall file in the court the record theretofore made, as provided in section 2112 of Title 28. Upon the filing of the petition the court shall have jurisdiction to affirm, to set aside, or modify the order of the Commission, and the findings of the Commission as to the facts, if supported by the weight of the evidence, shall in like manner be conclusive.
 
 
 [1]
 The Commission's unquestioned right to seek merely a preliminary injunction against a violation on an emergency or other valid basis, while it conducts a proceeding, is not here involved. The Commission here sought declaratory judgment of violation, a temporary restraining order, a preliminary injunction, a final permanent injunction, disgorgement of profits, liquidation of excess holdings, and "other" relief. Appellants challenged the regulation itself and sued agency employees. The district court enjoined the Commission from disclosing appellants' trading. The Commission sought a full panoply of relief and relied on the court's expertise, not its own. All of these matters are before this court in Hunt I. It is disingenuous of the Commission's brief, therefore, to excuse its proceeding administratively, After the district court's decision, on the ground that it was seeking only preliminary relief from the district court
 The Commission's statement to us that only preliminary relief was sought in the district court is the more startling in light of its position before its Administrative Law Judge (ALJ) in opposing appellants' motion to dismiss the administrative proceeding:
 The order of the District Court in the matter of the CFTC v. N. B. Hunt, et al., (77 C 1489) satisfies this test. After the District Court Denied the Commission's original motion for a preliminary injunction, the matter was set for trial. Extensive discovery was conducted by both parties. Several days of testimony was heard by the Court in both June and July of 1977. Findings were proposed by both sides, briefs submitted, And a final decision rendered. In short, both the CFTC and respondents were accorded a full opportunity for an adversary hearing. Additionally, the District Court ruling is a Final order for purposes of appeal; it carries the label of a final order; It disposes of all of the claims between the parties ; jurisdiction has passed from the District Court to the Court of Appeals; And the nature of the proceedings was such that the District Court had jurisdiction to render a final decision on the issues. (Emphasis added.)
 
 
 [2]
 And without notification to the courts, hardly an example of the "coordinated action" of courts and agencies envisaged by the Court as ideal in United States v. Morgan, 307 U.S. 183 at 191, 59 S.Ct. 795, 83 L.Ed. 1211. Appellant moved this court to stay the administrative proceedings until this court decides this appeal in Hunt II. That motion should have been granted
 
 
 [3]
 The record reflects no "emergency" extant, and the Commission asserts none before us. The district court's May 6 finding of "no emergency," affirmed by this court, still stands. Indeed, in resisting appellants' motion for this court to enjoin its administrative proceeding, the Commission says appellants should have gone first to the district court because "No emergency exists." The nearest the Commission comes is a reference to the risk of future violations, ignoring completely the district court's contrary finding and the pendency of that question before this court in Hunt I. The only authority it cites for its simultaneous proceedings is United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), in which the court sanctioned simultaneous criminal and civil court proceedings by the FDA in view of the public interest in protection against misbranded drugs. In Kordel, however, the FDA did not institute an administrative proceeding on the same facts and allegations on which a district court had ruled and during the pendency of cross-appeals from those rulings
 
 
 [4]
 The Commission makes the standard argument that appellants show no irreparable injury, merely a loss of time and money, and says any mistakes it makes can be rectified on appeal. Sympathy for the apparently wealthy appellants is not required. The injury done to the justice system by simultaneous litigation is enough
 Nonetheless, it is idle to pretend that unwarranted waste of time and money by appellants (and by the taxpayers who must fund the Commission and the courts) is "reparable" in a second appeal. Regulatory agencies are essentially immune from responding in damages for even the most flagrantly arbitrary and capricious action. The balance is not easily drawn. Government agencies must be able to act expeditiously in performing their duties to advance the public interest. If public respect for the regulatory process is to be maintained, however, responsible agency action is an imperative. Until Congress shall devise some means for compensating the citizen for time and money lost to unequivocally arbitrary and capricious agency action, the poorer citizen must surrender. Win or lose, only the richer rich can fight. That the great majority of agency actions have been fully responsible, despite a "heads-we-win-tails-you-lose" status, is a tribute to the support of the public interest by dedicated and selfless agency employees.
 
 
 [5]
 The Commission conceded in Hunt I that defendants' activities had no effect on, and posed no threat to, the market. The record in Hunt I clearly confirms that fact
 
 
 [6]
 Even when the actions differed (court antitrust suit and Commission approval of asset merger), the Supreme Court said, "We think the Commission in those circumstances should await the decision of the courts." California v. Federal Power Commission, 369 U.S. 482 at 487, 82 S.Ct. 901 at 905, 8 L.Ed.2d 54. Here, the Commission's Enforcement Division, in its Motion for Summary Disposition, told the Commission's ALJ:
 The administrative complaint issued by the Commission in this case is, in all material respects, identical to the one filed in the District Court on April 28, 1977.
 The threshold issue before this Court (see n.8, Infra ), like that before the District Court, is whether or not respondents acted pursuant to an "expressed or implied agreement or understanding" * * * Regulation 150.4.
 Moreover, under the doctrine of collateral estoppel there are no genuine issues of material fact in the present case * * *.
 
 
 [7]
 In its administrative proceeding, the Commission's Enforcement Division moved for "summary disposition," repeatedly and universally referring to the Commission's hearing examiner (now-by-change-of-name Administrative Law Judge) as "this Court," e. g., "The threshold issue before this Court like that before the District Court, is whether or not respondents acted pursuant to an 'expressed or implied agreement or understanding' in acquiring soybean futures contracts, which, when aggregated, exceed the speculative limit established by Regulation 150.4." The district court here involved is referred to in the motion as merely "Frank J. McGarr." The Constitution reposes in the Congress the power to create courts
 
 
 [8]
 Confusing remedies and the facts on which remedies must be based, the Commission says it is not relitigating the same question of fact because the district court ruled "only on its prayer for preliminary relief," totally ignoring the district court's findings that continued violations were unlikely and that defendants may have acted in good faith, its refusal to order disgorgement and liquidation, and its injunction against disclosure, all of which the Commission has appealed to this court in Hunt I now pending. Further, if any substantive rights remain to be determined in a trial, after remand from this court in Hunt I, the Commission does not indicate how its simultaneous administrative proceedings and remedies can be consistent with fairness in such a trial or with the integrity of the judicial process, and nowhere indicates any new or different facts remaining to be found in its administrative proceedings. Nor does the Commission indicate how its simultaneous litigation on the same facts comports with justice, the quintessential goal and golden quest of the courts
 
 
 [9]
 The Commission's brief in Hunt I lauds the equity power of the courts as supporting its "demand" that profits be disgorged, though the statute admittedly makes no provision whatever for that remedy
 
 
 [10]
 The Commission's brief in this case (Hunt II) distinguishes its contemplated cease and desist order as having greater force and effect than a mere court injunction punishable only as a contempt of court:
 Although both an administrative cease and desist order and a court injunction are designed to restrain further violations of law, they are distinct remedies. Failure to obey an injunction carries the sanction of criminal or civil contempt in the court's discretion; on the other hand, noncompliance with an agency's cease and desist order subject the perpetrator to specific criminal penalties set forth in Section 6(c) of the Act of up to one year imprisonment and a $100,000 fine.
 The Commission's brief in Hunt I insists that the injunction it there sought should have been granted, referring to the "significant role of injunctive relief," and the "deterrent effect of a possible contempt proceeding."
 
 
 [11]
 The Commission also says the district court "recognized" and "relied on" the availability of "other remedies" in refusing an injunction in Hunt I. It is at best difficult to suppose that a district court, which denied an injunction, would have rested its denial on an expectation that the agency would frustrate its order by issuance of its own order to cease and desist
 
 
 [12]
 On April 26, 1978, the Commission's Administrative Law Judge certified to the Commission the questions of whether: (1) the administrative proceeding was barred by the district court decision; (2) the violation finding was binding; (3) the non-likelihood of continued violation finding was binding; (4) the good faith finding was binding; (5) application of sanctions by the Commission would be legal if (3) and (4) are answered "yes"; and (6) such sanctions should be imposed "as a matter of policy" if (3) and (4) are answered "yes". On July 20, 1978, the Commission declined to answer those questions