Lily G. HARVEY and Rosenthal & Company, Plaintiffs-Appellants,

v.

Gary L. SEEVERS et al., Defendants-Appellees.

No. 79–1803.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1980.

Decided July 14, 1980.

from changing the site of reparations hearings involving plaintiffs under the Commodity Exchange Act from Chicago to Seattle, Washington. On April 25, 1979, Judge Kirkland, who subsequently retired, denied the request for a preliminary injunction. Plaintiffs did not appeal but sought summary judgment on the mandamus question. On June 18, Judge McGarr, to whom the case had been transferred, denied summary judgment and at the same time granted a motion by defendant ALJ and members of the Commodities Futures Trading Commission to dismiss for want of exhaustion of remedies. Plaintiffs appealed. While the appeal was pending, the subject hearings took place in Seattle and defendants thus moved to dismiss the appeal. For the reasons set forth below, we agree that the case must be dismissed.

Rosenthal & Co. is registered as a futures commission merchant and Harvey is listed as an "associated person" under the comparatively new provisions of the Commodity Exchange Act (7 U.S.C. § 1 *et seq.*) entitling them to solicit and accept orders for the purchase and sale of commodities futures contracts. According to customer complaints filed with the Commission, Rosenthal, through its salesperson Harvey, solicited business from four Washington state residents between May 1976 and April 1977. The complaints alleged that in these solicitations Rosenthal engaged in unauthorized trading, non-disclosure, misrepresentations and misuse of customer funds. Pursuant to its authority under Section 14(a) of the Act (7 U.S.C. § 18(a)), the Commission determined that a hearing was necessary on the complaints and assigned the cases to an ALJ. The ALJ then scheduled hearings on the four complaints for May 1–4, 1979, in Chicago.

On February 1, in response to a motion from the complaints, the ALJ, relying on Section 14(b) of the Act (7 U.S.C. § 18(b)), moved the site of the hearings to Seattle, Washington. Plaintiffs challenged this decision, arguing that they were not "engaged in business" in Washington as required by

Ralph A. Mantynband, Chicago, Ill., for plaintiffs-appellants.

Gregory C. Glynn, Washington, D. C., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

Rosenthal & Co., a commodities broker with its principal place of business in Chicago, Illinois, and Lily G. Harvey, a Rosenthal employee, brought this action seeking mandamus and a preliminary injunction to prevent an administrative law judge (ALJ)

Section 14(b)[1] and requesting the ALJ to certify the question to the Commission for interlocutory review. When the ALJ refused, plaintiffs filed this lawsuit on February 28, 1979, alleging that the ALJ was without power to transfer the hearings to Washington and seeking an injunction to prevent the holding of the hearings in Seattle and mandamus to direct the ALJ to reschedule them for Chicago.

On April 25, 1979, Judge Kirkland denied the preliminary injunction. Assuming for purposes of his decision that he had jurisdiction and no exhaustion question existed, he found that plaintiffs had not shown a reasonable likelihood of success on the merits since it appeared that Rosenthal's repeated telephone and mail contacts with each of the four complainants amounted to being "engaged in business" in Washington for purposes of Section 14(b). Furthermore, Judge Kirkland found that the requisite irreparable injury was lacking since plaintiffs alleged little more than that the ALJ's decision might cause them additional litigation expense, which, under prevailing law, is insufficient for securing immediate relief. On the next day, the Commission, which had taken notice of the issue despite the absence of an ALJ certification, ruled that no extraordinary circumstances existed for reviewing the ALJ's decision not to certify the question for interlocutory relief by that agency. The Commission did, however, grant a request from plaintiff Harvey based on personal considerations to delay the hearings until July 17–20.

Then, after plaintiffs moved for summary judgment on the mandamus question, Judge McGarr dismissed the complaint on June 18, 1979. He found that plaintiffs had failed to exhaust their administrative remedies in that the ALJ's finding was "within his discretion and * * * reviewable in the normal course of proceedings under the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*" (App. 1 at 3). Plaintiffs filed a notice of appeal, but on July 17–20, the ALJ conducted the hearings with plaintiffs in attendance in Seattle, Washington. On August 30, defendants moved to dismiss the appeal as moot and we directed the parties to discuss the matter at oral argument.

On its face, plaintiffs' appeal does seem to be moot. Since the reparations hearings have already taken place, neither a preliminary injunction nor the mandamus requested in plaintiffs' complaint can at this late date afford them relief. Plaintiffs contend, however, that this case falls within that venerable class of exceptions to the mootness doctrine for cases that are "capable of repetition, yet evading review." See *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310. In particular, they argue that they face several of these reparations proceedings on a variety of complaints now pending before the Commission and that the short space of time between the filing of the complaints and the holding of the actual hearings before an ALJ ensures that the actions underlying the situs question will never survive long enough to allow for complete judicial consideration.

■ Although the precise parameters of this exception to the mootness doctrine are uncertain, it is clear that to be capable of repetition while evading review, an action must meet two quite independent requirements. First, the challenged action must be found to be "too short to be fully litigated prior to its cessation or expiration." Second, there must be "a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 18. Plaintiffs' showing here that they are the subject of numerous reparations proceedings, many of which may involve questions

---

1. Section 14(b) (7 U.S.C. § 18(b)) provides in pertinent part that

    "If there appear to be, in the opinion of the Commission, any reasonable grounds for investigating any complaint * * *, the Commission shall investigate such complaint and may * * * afford [the party complained against] an opportunity for a hearing thereon before an Administrative Law Judge designated by the Commission in any place in which the said person is engaged in business * * *."

**30**

of situs under Section 14(b), appears sufficient to meet the second prong of this test. Our concern is whether the federal court complaint in which the situs issue is presented will always expire before that issue receives full judicial consideration and thus that the directives of Section 14(b) and the ALJ's compliance with them will evade review by the courts.

■ The plaintiffs' suggestion that this case will evade review is open to serious doubt for two reasons. First, plaintiffs have the option of refusing to appear for the reparations proceedings at the challenged situs. Such a default on their part will isolate the specific issue presented here for immediate review by the Commission and ultimate consideration by the courts. To be sure, this Court has in the past been reluctant to require a party to risk serious judicial sanctions in order to preserve a question that will otherwise become moot. See *In re Special April 1977 Grand Jury*, 581 F.2d 589 (7th Cir. 1978), certiorari denied *sub nom. Scott v. United States*, 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 705; but see *United States v. Arthur Andersen & Co.*, 623 F.2d 720 (1st Cir. 1980). In the present case, the claims at issue are relatively small so that the risk associated with the default is minor. Such considerations warrant departure from our ordinary rule.

Alternatively, and more substantively, plaintiffs may attend the hearings, and, having preserved the situs issue for consideration, challenge the ALJ's decision on that ground, first before the full Commission and ultimately in the courts, upon appeal from an adverse decision of that agency (7 U.S.C. § 18(g)). In an argument borrowed in part from their discussion of the exhaustion question (see *infra*), plaintiffs respond that the situs issue cannot receive meaningful review in these forums for both the Commission and the courts will be left without a remedy should they determine that the situs was improper. See K. C. Davis, 3 *Treatise on Administrative Law*, § 20.05 at 86. L. Jaffee, *Judicial Control of Administrative Action* 429. The gravamen of this argument appears to be that the

numerous reparations hearings that the Commission will conduct before this case or any other receives direct statutory review in an appellate court will result in considerable litigation expense that plaintiffs will be unable to recoup even if the courts ultimately decide in their favor. Moreover, they say since the situs provision is intended in part to save plaintiffs this expense, the courts will be unable to give it full effect unless this Court is willing to consider the case at this point.

We have rejected a similar argument in the exhaustion context (*Rosenthal & Co. v. Bagley*, 581 F.2d 1258, 1262 (1978)), and we see no reason to accept it in deciding the mootness question. Litigation expenses, even large, unrecoverable expenses, have never been an adequate basis upon which to rest judicial relief. See *Frey v. Commodity Exchange Authority*, 547 F.2d 46, 49 (7th Cir. 1976). Plaintiffs' attempt to overcome this general rule by raising the specter of costs stemming from other related proceedings is too speculative and threatens to subject the doctrine of mootness to arbitrary and potentially conflicting decisions based simply on the amount of expense involved.

Apart from this consideration, the courts clearly have a means to review any improper application of Section 14(b). Plaintiffs have specifically argued that the situs provision of that Section is jurisdictional, and it is therefore well within the judicial power to give effect to such a requirement by setting aside any decision of the Commission against plaintiffs in which the situs provision is improperly applied. Indeed, since the hearings have already taken place, plaintiffs are now seeking action by this Court directing defendants to hold the reparations hearings anew. If such relief is appropriate at this juncture, it may just as easily be applied on direct appeal. A decision at that point on the proper construction of Section 14(b) will surely gain the appropriate response from the agency in its subsequent proceedings against plaintiffs.

■ Ultimately there is no need to rely on the application of these principles in the mootness context in order to uphold the

judgment of the district court in dismissing the case. Even if the specter of litigation expenses renders this case sufficiently elusive to "evade review," rendering it not moot, the cases cited above clearly demonstrate that such expenses are an insufficient basis for contesting dismissal of plaintiffs' suit for failure to exhaust administrative remedies. See also *Coca-Cola Co. v. FTC*, 475 F.2d 299 (5th Cir. 1973), certiorari denied, 414 U.S. 877, 94 S.Ct. 121, 38 L.Ed.2d 122. Plaintiffs suggest, however, that if the case is not moot because the issue may evade review, requiring exhaustion gives rise to a paradox, for plaintiffs would then have to exhaust the very remedies that, in the mootness context, appeared insufficient to afford them full relief. They note that, like the exception to the mootness doctrine for cases evading review, an exception applies in the exhaustion context for those cases in which an issue cannot receive meaningful review before the agency or a court with jurisdiction. Plaintiffs thus argue that any injury cognizable for mootness purposes should also bring their case within this exception to the general exhaustion requirement.

But it does not follow from the similarities between the two arguments that the standards for application of the exceptions to the mootness and exhaustion doctrines are necessarily congruent. Indeed, closer consideration of the two doctrines dispels any suggestion of a contradiction in applying an exception in one case but not the other. The mootness doctrine sets a mere outer limit on federal judicial power under the Constitution requiring merely some evidence of an impact on the parties that may allow for judicial action. Exhaustion on the other hand embodies a variety of less lofty, if important, policies regarding the use of judicial resources, the application of agency expertise, and the orderly conduct of administrative proceedings. See *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct.

2457, 2466, 45 L.Ed.2d 623. Accordingly, it is conceivable that a case could raise sufficient concerns about the future untoward effects on the parties to justify application of judicial power generally without presenting adequate reasons for overcoming the competing concerns presented by the exhaustion doctrine for withholding immediate judicial relief. It is, for example, beyond cavil that to be effective, administrative bodies must be free from harassment by parties filing lawsuits over procedural questions that, although important, threaten by their very number to disrupt the agency proceedings. Thus the general rule against judicial review of non-final procedural rulings applies to judicial review of administrative proceedings (see *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. National Assoc. of Securities Dealers, Inc.*, 616 F.2d 1363 (5th Cir. 1980), and because of the expertise often associated with agency consideration, may in fact be even more compelling in this context. The situs provision challenged here presents the kind of issue that engenders such a concern. Indeed, if this Court were to intercede to decide such a question, it is doubtful that the scope of judicial intervention could ever be cabined in a principled manner. And even if this rule may leave some agency errors uncorrected, that result is "part of the price we pay for the advantages of an administrative process." *Thermal Ecology Must Be Preserved v. Atomic Energy Commission*, 433 F.2d 524 (D.C.Cir. 1970).[2]

It is for these reasons that this Court in *Maremont Corp. v. FTC*, 431 F.2d 124 (1970), refused to interfere with a hearing examiner's determination under the Administrative Procedure Act (APA) of the proper venue for a hearing regarding alleged violations of the antitrust laws. Acknowledging that the venue issue would likely not receive the kind of review ordinarily preferred when exhaustion is required, this Court noted that in the absence of some showing that the hearing examiner acted

2. In discussing exhaustion, plaintiffs contended at oral argument that a refusal by this Court to decide the situs issue at this juncture would cause them injury by forcing them to appeal an adverse decision of the Commission to a different court of appeals. Even assuming this forum-shopping rationale is entitled to some consideration, we do not regard it as substantial enough to warrant interlocutory relief here.

arbitrarily or capriciously, it did not believe that a litigant unhappy with the hearing examiner's decision regarding venue should be able to impede the agency's work by filing a federal lawsuit. *Maremont*'s conclusion with respect to the APA venue provision applies equally well to the situs provision of the Commodity Exchange Act.

Plaintiffs challenge this conclusion by noting that in *Maremont* the Court was considering only whether the hearing examiner had complied with a mere "convenience of the parties" requirement of the APA whereas in this case the statutory language is, they say, far more limited and specific, granting the ALJ far less if any, discretion. Although *Maremont* itself implicitly acknowledges that the clearer a departure from the intendment of the statute, the stronger the case for court intervention, on balance the facts here may actually provide a more compelling case for judicial restraint than did *Maremont*. First, it is worth noting that if the situs requirement of Section 14(b) is truly jurisdictional or even simply more substantial than the "convenience of the parties" language of the APA, then the Commission and the courts will have far less difficulty justifying the severe sanction of correcting the Commission's error upon direct review. The need for judicial intervention is thus arguably less pressing. More substantially, these plaintiffs have already incurred the litigation expenses associated with the Washington hearings and although they cite the continuing costs of other associated reparations proceedings, they have not made a showing that the threatened injury is greater than that anticipated from the antitrust hearing in *Maremont*. Such a hearing would likely continue over an extended period of time during which the travel expenses of the parties could easily dwarf the expenses of plaintiffs in the various reparations proceedings. Such a consideration shows the inadvisability of pinning the availability of interlocutory review upon the level of litigation expense.

A third reason that this case is arguably more compelling than *Maremont* is that the allegedly stricter language of Section 14(b) does not, as plaintiffs suggest, remove all discretion from the ALJ. Not only may the ALJ use a "convenience" factor in choosing among those places meeting the statutory criteria (17 C.F.R. § 12.71(d)), but the determination of where the plaintiff is "engaged in business" requires some application of the agency's expertise regarding the nature and the course of commodities sales. In contrast with *Maremont*, in which the hearing examiner had merely to consider the non-technical issue of convenience, there is far more reason here to defer to the judgment of the ALJ and the Commission and to refuse to interfere with their orderly processing of the complaints. Finally, in *Maremont* plaintiffs were still entitled to challenge the application of the exhaustion requirement by arguing that the hearing examiner had acted arbitrarily or capriciously. In this case, plaintiffs are arguably precluded from making such a showing since they failed to appeal Judge Kirkland's denial of the preliminary injunction. Although his decision does not stand for the proposition that the ALJ necessarily made the correct decision, his unappealed explicit holding that plaintiffs had failed to show a likelihood of success on the merits should at least estop them from arguing on this appeal that the ALJ's decision was arbitrary or capricious.

Judgment affirmed.