696 F.2d 1193
 Frances Brahna DENBERG and Albert A. Denberg, on behalf of
themselves and all others similarly situated,
Plaintiffs-Appellees,
v.
UNITED STATES of America RAILROAD RETIREMENT BOARD and James
L. Cowen, individually and as chairman of the
United States of America Railroad
Retirement Board, Defendants-Appellants.
 No. 81-2386.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 25, 1982.
Decided Jan. 4, 1983.
As Modified Jan. 5, 1983.
As Amended on Denial of Rehearing and
Rehearing En Banc May 10, 1983.
 
 Frank A. Rosenfeld, Dept. of Justice, Civ. Div., Washington, D.C., for defendants-appellants.
 A. Raymond Randolph, Sharp, Randolph & Green, Washington, D.C., for plaintiffs-appellees.
 Before WOOD and POSNER, Circuit Judges, and FOREMAN,* Chief Judge.
 POSNER, Circuit Judge.
 
 
 1
 In 1975 Albert Denberg, whose wife Frances is a retired railroad worker, applied to the Railroad Retirement Board for spouse's benefits under the Railroad Retirement Act of 1974, 45 U.S.C. Secs. 231 et seq. The Act provides that a husband is eligible for spouse's benefits only if he was receiving at least one half of his support from his wife at the time that she began receiving benefits. 45 U.S.C. Sec. 231a(c)(3)(ii). There is no similar requirement if the applicant is a wife. Denberg's application was denied because he did not satisfy the one-half requirement. He could have appealed the denial to the Board's Bureau of Hearings and Appeals, see 20 C.F.R. Sec. 260.4, and then to the Board itself, see 20 C.F.R. Sec. 260.6, but instead he and his wife brought this suit in federal district court in 1976 challenging the differential treatment of husbands and wives under the statute as unconstitutional. (What standing his wife has to complain about the denial of benefits to him we do not understand, but we will not pursue the question because the answer would not affect our decision.) The suit was later certified as a class action, with Mr. Denberg as the class representative. The class consists of all husbands disentitled to spouse's benefits by virtue of section 231a(c)(3)(ii), whether or not like Denberg they made application to the Board.
 
 
 2
 While the case was pending in the district court, the Sixth Circuit, in Kalina v. Railroad Retirement Board, 541 F.2d 1204 (6th Cir.1976), held that section 231a(c)(3)(ii) was unconstitutional, and the Supreme Court affirmed summarily, 431 U.S. 909, 97 S.Ct. 2164, 53 L.Ed.2d 220 (1977), on the authority of Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), which had struck down a similar provision in the Social Security Act. After the Supreme Court's affirmance in Kalina, the main question left for decision in this case was how far back the plaintiffs could reach for benefits wrongfully denied them. The district court, in its final judgment, entered in June 1981, held they could reach back to April 7, 1974, one year before Mr. Denberg had filed his application. The court ordered that notice of its judgment be sent to the members of the class, telling them to file their claims with the Board no later than October 15, 1981. On October 1, the Board informed the court that 5,450 apparently meritorious claims had been received. The total amount due these claimants has not been calculated but the Board estimates that it could approach $60 million.
 
 
 3
 Since the statute was held unconstitutional by the Supreme Court in Kalina before the district court entered its judgment from which the government has appealed, section 1252 of the Judicial Code, which read in light of section 1291 gives the Supreme Court exclusive jurisdiction over appeals from any federal district court order holding an Act of Congress unconstitutional in a suit to which a federal agency is a party, is inapplicable. The judgment appealed from was not a judgment holding a statute unconstitutional--the statute had already been held unconstitutional by the Supreme Court in another case--but a judgment concerning the remedial consequences of the statute's unconstitutionality. Once the unconstitutionality of a statute has been authoritatively determined by the Supreme Court, there is no purpose in allowing an expedited appeal to the Court from a subsequent district court judgment merely premised on that determination.
 
 
 4
 The only other question we need consider is whether the district court had jurisdiction of the subject matter of this suit. Section 1337 of the Judicial Code, on which the district court relied for jurisdiction, gives the district courts original jurisdiction over "any civil action or proceeding arising under any Act of Congress regulating commerce ...." The Railroad Retirement Act is an act regulating commerce, Finnerty v. Cowen, 508 F.2d 979, 983 (2d Cir.1974), and this suit arises under the Railroad Retirement Act because it is a suit for benefits provided by the Act although it challenges the constitutionality of one of the Act's provisions. However, section 5(f) of the Railroad Unemployment Insurance Act, 45 U.S.C. Sec. 355(f), incorporated by reference into the Railroad Retirement Act of 1974, see 45 U.S.C. Sec. 231g, provides that "any claimant ... may, only after all administrative remedies within the [Railroad Retirement] Board have been availed of and exhausted, obtain a review of any final decision of the Board by filing a petition for review" in a federal court of appeals. Therefore, if 28 U.S.C. Sec. 1337 gives the district court jurisdiction of this case, an applicant for railroad retirement benefits either can exhaust his remedies within the Board and then seek judicial review in a court of appeals under section 5(f)--the route taken by Kalina--or like Denberg can forget about his remedies within the Board and go directly into a district court under 28 U.S.C. Sec. 1337 with, of course, a right of appeal to a court of appeals should he lose in the district court.
 
 
 5
 It would be surprising if Congress had wanted to give applicants for railroad retirement benefits such a choice. Cf. Oljato Chapter of Navajo Tribe v. Train, 515 F.2d 654, 660 (D.C.Cir.1975). A purpose to do so cannot be inferred from the general grant of jurisdiction in section 1337 of the Judicial Code, which so far as relevant here dates back to 1911 (see 36 Stat. 1093), long before the enactment of the first Railroad Retirement Act in 1934 (see 48 Stat. 1283); and in any event seems foreclosed by section 10(b) of the Administrative Procedure Act, 5 U.S.C. Sec. 703. This section provides that "the form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action ... in a court of competent jurisdiction." In other words, if there is a special statutory review proceeding, it is exclusive. City of Rochester v. Bond, 603 F.2d 927, 935 (D.C.Cir.1979); S.Rep. No. 752, 79th Cong., 1st Sess. 44 (1945). There is one here--the proceeding in section 5(f) of the Railroad Unemployment Insurance Act.
 
 
 6
 The district court conceived section 5(f) differently: not as a specification of a section 10(b) "special statutory review proceeding" but as a requirement that administrative remedies be exhausted before the claimant can get judicial review. This distinction is relevant because the requirement of exhaustion is waived when exhaustion would be futile--when an applicant could not possibly get the initial denial of his application reversed within the agency. See, e.g., Continental Can Co., U.S.A. v. Marshall, 603 F.2d 590, 597 (7th Cir.1979). Exhaustion would have been futile here because the Railroad Retirement Board does not have the authority to declare statutes that it administers unconstitutional. Cf. Weinberger v. Salfi, 422 U.S. 749, 765-66, 95 S.Ct. 2457, 2466-67, 45 L.Ed.2d 522 (1975). But this conclusion does not, as the district court believed, eliminate section 5(f) as an obstacle to the district court's jurisdiction. The section does two things, and requiring exhaustion of administrative remedies is only one; the other is creating a special statutory review proceeding. See Weinberger v. Salfi, supra, 422 U.S. at 776, 95 S.Ct. at 2472, where this distinction is clearly stated. In a case like this where exhaustion of administrative remedies is futile, the initial decision of the agency denying benefits becomes the final decision to which section 5(f) refers, and the disappointed applicant can go directly to court for review of the denial. See id. at 766-67, 95 S.Ct. at 2467. But unless section 10(b) of the Administrative Procedure Act is to be ignored, it is to the court of appeals that he must go.
 
 
 7
 The plaintiffs admit in their brief that Mr. Denberg could have gone to the court of appeals directly after the denial of his application. There was no problem of "absence or inadequacy" of the special statutory review proceeding of section 5(f). They thus are asserting a right to choose whether to go to the district court or the court of appeals. But it is against common sense that a disappointed claimant should have a choice whether to seek judicial review in a district court with a right of appeal to the court of appeals, or in a court of appeals in the first place, see Sun Enterprises, Ltd. v. Train, 532 F.2d 280, 287 (2d Cir.1976); and section 10(b) of the Administrative Procedure Act makes clear that it is the latter forum, and the latter forum alone, in which review may be sought.
 
 
 8
 Confining judicial review to the courts of appeals is not some mindless, irksome technicality that we should try to construe our way around. It is the use of the district courts to review administrative action that does not make sense when there is review jurisdiction in the courts of appeals. Not only are the district courts trial rather than review courts; but to allow someone seeking judicial review of administrative action to get that review in the district court with a right of appeal to the court of appeals is to give him two judicial reviews of administrative action. That is too much, except in very special circumstances, as when the administrative proceeding is informal and the record of that proceeding has to be reconstructed in the judicial review proceeding before the judicial review proper can begin. See, e.g., Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor, 619 F.2d 231, 241 (3d Cir.1980); Edgewater Nursing Center, Inc. v. Miller, 678 F.2d 716, 718 (7th Cir.1982). That would be a case of "inadequacy" of the special statutory review proceeding. 5 U.S.C. Sec. 703. It is not a problem here. The very reason that administrative remedies do not have to be exhausted in this case is that Mr. Denberg's challenge to the denial of his application is based on a pure issue of constitutional law that the agency considers beyond its competence to decide.
 
 
 9
 It is therefore not surprising that the courts, with or without mention of section 10(b) of the Administrative Procedure Act, have held repeatedly that when Congress provides for review jurisdiction in the courts of appeals, their jurisdiction is exclusive. See, e.g., Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411, 422, 85 S.Ct. 551, 558, 13 L.Ed.2d 386 (1965); Oling v. Air Line Pilots Ass'n, 346 F.2d 270, 276 (7th Cir.1965); Gardner v. State of Alabama, Dept. of Pensions & Security, 385 F.2d 804, 810 (5th Cir.1965); Investment Co. Inst. v. Board of Govs. of Fed. Reserve System, 551 F.2d 1270, 1278-80 (D.C.Cir.1977); Independent Cosmetic Mfrs. & Distribs., Inc. v. HEW, 574 F.2d 553, 554-56 (D.C.Cir.1978); City of Rochester v. Bond, supra, 603 F.2d at 934-35; Compensation Dept. Five, United Mine Workers of America v. Marshall, 667 F.2d 336, 340 (3d Cir.1981); Columbia Power Trades Council v. United States Dept. of Energy, 671 F.2d 325, 326 (9th Cir.1982); City of Peoria v. General Elec. Cablevision Corp., 690 F.2d 116, 122 (7th Cir.1982); Davis, Administrative Law Treatise Sec. 23.03-1 (1982 Supp.). As this court stated recently in holding that district court jurisdiction to review administrative action would not lie under 28 U.S.C. Sec. 1337 where a statute conferred review jurisdiction on the courts of appeals, "It is well established that a special statute vesting jurisdiction in a particular court cuts off the jurisdiction other courts might otherwise have under a more general statute." Assure Competitive Transport., Inc. v. United States, 629 F.2d 467, 471 (7th Cir.1980). And where it is unclear whether review jurisdiction is in the district court or the court of appeals the ambiguity is resolved in favor of the latter, see Rockford League of Women Voters v. Nuclear Regulatory Comm'n, 679 F.2d 1218, 1221 (7th Cir.1982), as it should be in light of the general considerations discussed above, see Currie & Goodman, Judicial Review of Federal Administrative Action: Quest for the Optimum Forum, 75 Colum.L.Rev. 1, 16-19 (1975). Here there is no ambiguity.
 
 
 10
 The plaintiffs argue that if Denberg and the other plaintiffs could not have obtained judicial review in district court, where a class action is possible, the courts of appeals would have been inundated with more than 5,000 separate review proceedings rather than a single appeal from the district court's judgment in the class action. But of the 5,450 class members who apparently have meritorious claims under the district court's judgment, only 15, including Mr. Denberg, applied to the Board for benefits. The avalanche of claims was triggered by the notice sent out by the district court; there would have been no such notice, and no avalanche, without the district court suit. And even if there had been 5,000 or more separate filings in the courts of appeals, the vast majority of these would have been stayed to await the decision in the handful that would have been actively litigated. Also, since a class action is a voluntary procedure and any member of the class can if he wants opt out of the class action and bring his own suit, it was not clear in the beginning that only one district court suit would be brought.
 
 
 11
 In any event, jurisdictional lines should not be drawn on a case by case basis. If jurisdiction lies in the district court only when a big saving in judicial resources would result, and in the court of appeals when it would not, the Denbergs of this world will have no clear idea in which court to seek judicial review of adverse agency action. In addition, a case by case approach would involve a complete judicial rewriting of the review statutes, 5 U.S.C. Sec. 703 and 45 U.S.C. Sec. 355(f). Jurisdiction has to be all in the district court or all in the court of appeals. And there is no reason to think the former choice will in general be more sparing of judicial resources than the latter, since giving the district court review jurisdiction creates two levels of judicial review.
 
 
 12
 In holding that it had jurisdiction, the district court cited only one case, Finnerty v. Cowen, supra, also a suit under 28 U.S.C. Sec. 1337 against the Railroad Retirement Board. The Second Circuit's very brief discussion of the jurisdictional question treats section 5(f) as merely requiring exhaustion of administrative remedies, which as in the present case would have been futile. See 508 F.2d at 984. Finnerty is somewhat different from the present case because the plaintiff there was not complaining that benefits had been denied her; she was complaining that the Board was not paying her as much as she was entitled to; and the court may have thought that this type of Board action was not a "final decision" reviewable through the section 5(f) procedure. In any event, the premise of the jurisdictional analysis in Finnerty was demolished a year later by Weinberger v. Salfi, supra, which distinguished the exhaustion from the jurisdictional function of statutes that prescribe the method of judicial review of agency action. See 422 U.S. at 766, 95 S.Ct. at 2467.
 
 
 13
 We conclude that the district court did not have jurisdiction over Mr. Denberg's claim. It remains to consider whether it had jurisdiction over the claims of class members who unlike Denberg never filed applications with the Board and therefore could not have sought judicial review of the Board's denial of their applications in a court of appeals under section 5(f). Since the district court never had jurisdiction over the claim of the class representative, Mr. Denberg, it had no jurisdiction over the class action either even if the claims of some of the members of the class were within its jurisdiction. Jurisdiction cannot be obtained retroactively. See Mansfield, Coldwater & Lake Michigan Ry. v. Swan, 111 U.S. 379, 381-82, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884); People of State of Illinois v. General Elec. Co., 683 F.2d 206, 209 (7th Cir.1982). If the court did not have jurisdiction over the Denbergs' action when it was filed, it did not have jurisdiction to certify the action as a class action under Fed.R.Civ.P. 23(c)(1) two years later. If Mr. Denberg's claim had been within the jurisdiction of the district court when the complaint was filed and the class action certified, and later had been paid or otherwise mooted, the class action might have survived with Denberg as the class representative. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 398, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980). But there is no authority for allowing a class action to continue if the complaint when filed was not within the jurisdiction of the district court.
 
 
 14
 But to stop with this observation would encourage the filing of a new class action with a different class representative, and as we think it clear that the district court would have no jurisdiction over such an action we shall place our denial of jurisdiction over the class action on a somewhat broader ground. Section 5(f) as we said earlier has two functions--to provide a procedure for judicial review and to require (where appropriate) exhaustion of administrative remedies. No purpose would have been served by requiring Mr. Denberg to appeal the denial of his application for benefits to the appellate tribunals within the Board; therefore he was not required to do so. But it does not follow that he was not required to file an application for benefits in the first place. That was not a futile step on the path to eventual judicial review. The Board was entitled to an opportunity to determine whether Mr. Denberg was entitled to benefits apart from any statutory disqualifications that the Board was bound to impose regardless of constitutional doubts. See Rosenthal & Co. v. Bagley, 581 F.2d 1258, 1260 (7th Cir.1978). It might have turned out that Mr. Denberg was not the husband of a retired railroad worker, or was otherwise ineligible on grounds unrelated to how much support he received from his wife. The power to make these determinations is in the Board rather than the district court or any other court.
 
 
 15
 Thus the exhaustion requirement of section 5(f) was applicable to this case to the extent of requiring anyone who wanted to get judicial review of the dependency requirement in the Railroad Retirement Act to apply to the Board for retirement benefits and to obtain from the Board a decision on his application. We think this point is conceded all around: the district court itself required exhaustion of administrative remedies to this limited extent though not in the form prescribed by section 5(f). The court did not try to determine which members of the class were entitled to benefits, but instead ordered the Board to make that determination; in effect it made the class members who had not applied to the Board do so. But this is not the method of exhausting administrative remedies that the statute prescribes. The claimant must go to the Board first and if he is turned down appeal the decision within the Board or if that would be futile to the court of appeals. At no time is he supposed to be in the district court.
 
 
 16
 The judgment of the district court is reversed with directions to dismiss the complaint for lack of subject-matter jurisdiction.
 
 
 17
 SO ORDERED.
 
 
 18
 HARLINGTON WOOD, Jr., Circuit Judge, dissenting.
 
 
 19
 The majority opinion follows the customary jurisdictional track for administrative review. I hesitate to take another route, but it seems to me that the good reasons for following that customary procedure laid out for the ordinary Board case are without substance in the circumstances of this particular case. There has been determined to be a constitutional flaw in the Board's statute. Based on that statute, however, the Board closed its front door to all applicants similarly situated. The majority is saying that nevertheless, each applicant, one by one, should have continued to knock on the Board's door even though it was demonstratively futile. Each day spent knocking was a sacrifice of benefits to which at least many of the applicants were entitled. Since the Board was so inhospitable to these claimants, no record to review was developed to which we could apply the ordinary standards of review and in the process be judicial beneficiaries of the Board's expertise. The ordinary review route therefore serves neither the review function of this court nor the interests of the parties even though the case by either route comes ultimately to this court. Issues are involved which can benefit in their development and consideration by a district court as happened in this case. In order to try to justify this judicial detour some expansion of the facts and circumstances set forth in the majority opinion is required.
 
 
 20
 This class action began as a constitutional challenge to the discriminatory treatment of male spouses of female railroad employees under the dependency provision of section 2(c)(3)(ii) of the Railroad Retirement Act of 1974 ("the Act"), 45 U.S.C. Sec. 231a(c)(3)(ii). While the case was pending before the United States District Court for the Northern District of Illinois, the Supreme Court struck down the dependency provision. Railroad Retirement Board v. Kalina, 431 U.S. 909, 97 S.Ct. 2164, 53 L.Ed.2d 220 (1977), aff'g, 541 F.2d 1204 (6th Cir.1976). The district court then ordered defendant Railroad Retirement Board ("the Board") to identify all spouses who would have been eligible for benefits under the Act, but for the dependency provision. The district court ordered the Board to pay the spouses the sums due regardless of whether the spouse had previously filed an application for benefits. The Board here challenges the jurisdiction of the district court and the scope of relief. I would affirm the district court's ruling with respect to its jurisdiction, but modify the scope of retroactive relief.
 
 
 21
 Albert Denberg applied on April 7, 1975, for spouse's benefits under the Act and was denied benefits because he did not meet the dependency requirement. Denberg did not pursue his administrative remedies. Instead, on March 5, 1976, plaintiffs Albert and Frances Brahna Denberg filed suit in the district court challenging section 2(c)(3) of the Act, 45 U.S.C. Sec. 231a(c)(3), on the ground that it was unconstitutional in that it violated the due process and equal protection guarantees of the Fifth Amendment. Plaintiffs sought declaratory and injunctive relief and an award of retirement benefits to which they were allegedly entitled, but for the existence of section 231a(c)(3).
 
 
 22
 The Board moved to dismiss this case, arguing that plaintiffs failed to exhaust their administrative remedies. On November 30, 1976, the district court denied the motion. The court found that plaintiffs were not required to exhaust their administrative remedies and that the court had jurisdiction under 28 U.S.C. Sec. 1337.
 
 
 23
 On May 25, 1978, the district court granted plaintiffs' pending motion to certify them as representatives of a class. The Denbergs sought relief on behalf of themselves and "All past, present and future spouses of retired female railroad employees who have been, are being or will be denied a spouse's annuity under the Act by virtue of 45 U.S.C. Sec. 231a(c)(3)(ii)." Pursuant to Fed.R.Civ.P. 23, the court ordered notice of the class action to be sent to all retired female railroad employees entitled to an annuity under the Act, permitting them to withdraw from the class. Fed.R.Civ.P. 23(c)(2)(A).
 
 
 24
 On June 8, 1981, the district court granted summary judgment to plaintiffs. The district court held no true issue of retroactivity was presented and that sovereign immunity did not bar the requested relief. The district court ordered the Board to identify all spouses who would have been eligible for benefits between April 7, 1974,[1] or the date on which the applicant became eligible for benefits (whichever was later) and August 15, 1981, but for the dependency provision. The Board was directed to pay them the sums due for that period, whether or not the spouse had previously filed an application for benefits with the Board.
 
 
 25
 The court stayed, pending appeal, that portion of its order requiring actual computation of benefits to each eligible individual. The usual agency function therefore yet remains to be fulfilled by the agency on each individual situation. Pursuant to the judgment order, however, the Board sent 36,564 notices to female employee annuitants and other potential beneficiaries under the class action and set October 15, 1981, as the deadline for filing claims. As of October 1, 1981, the Board had received 6,189 responses, for which 5,450 claimants were preliminarily determined eligible to receive some retroactive payment.
 
 I. Jurisdiction
 
 26
 The Act provides that when the employee and "spouse" have met various eligibility requirements of age and length of service, the "spouse" shall be entitled to an annuity "if he or she has filed application therefor." 45 U.S.C. Sec. 231a(c)(1). If the "spouse" is dissatisfied with the initial decision regarding his claim, he can appeal to the Bureau of Hearings and Appeals, 20 C.F.R. Sec. 260.4 (1981), then to the Board, 20 C.F.R. Sec. 260.6 (1981), and finally to the court of appeals, 45 U.S.C. Secs. 231g, 355(f). In this case, after the plaintiffs received initial denial of their claim, they filed suit in the district court.
 
 
 27
 The district court exercised jurisdiction pursuant to 28 U.S.C. Sec. 1337, which grants original jurisdiction to the district courts over "any civil action or proceeding arising under any Act of Congress regulating commerce...." The district court recognized that "as a general rule a party seeking to challenge a decision of an administrative agency is denied access to the federal courts until he has exhausted his administrative remedies." It noted that the exhaustion requirement reflects a two-pronged policy of judicial economy and judicial respect for an independent branch of government. McKart v. United States, 395 U.S. 185, 194-95, 89 S.Ct. 1657, 1662-63, 23 L.Ed.2d 194 (1979). The district court, however, held that the exhaustion doctrine did not bar the present action since the policy reasons for invoking the doctrine were not operative. Weinberger v. Salfi, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975); Downen v. Warner, 481 F.2d 642, 643 (9th Cir.1973); K. Davis, Administrative Law of the Seventies Sec. 20.04, at 458 (1976).
 
 
 28
 The majority holds that the district court should not have exercised jurisdiction. Although the majority finds that Denberg was not required to exhaust his administrative remedies, it states that Denberg should have pursued judicial review according to the administrative scheme set out in the Act. The majority reasons that since there is a special statutory review proceeding, it is exclusive. That statute, however, only comes into play after a "final decision of the Board" and "after all administrative remedies within the Board have been availed of and exhausted." The majority tries to take care of those requirements by stating, without citation, that the initial decision of the agency became the "final decision" from which judicial review could be sought. Thereby by passing the other usual administrative steps, it thus appears that even the majority would map out its own jurisdictional detour.
 
 
 29
 I agree, however, that exhaustion was not required in this case since none of the purposes of the doctrine would have been served by requiring plaintiffs to take their claims through the agency. See, e.g., Matter of Neavear, 674 F.2d 1201, 1203 (7th Cir.1982); Continental Can Co. v. Marshall, 603 F.2d 590, 597 (7th Cir.1979); Weyerhaeuser Co. v. Marshall, 592 F.2d 373, 376-77 (7th Cir.1979); see also Downen v. Warner, 481 F.2d 642, 643 (9th Cir.1973). Moreover, courts and commentators have often asserted that administrative agencies do not have the power to pass upon constitutional challenges to statutes since only courts have authority to take action which runs counter to the expressed will of the legislative body. Moore v. City of East Cleveland, 431 U.S. 494, 526, 97 S.Ct. 1932, 1949, 52 L.Ed.2d 531 (1977) (Burger, J., dissenting); Weinberger v. Salfi, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975); Johnson v. Robison, 415 U.S. 361, 368, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974); Buckeye Industries, Inc. v. Sec. of Labor, 587 F.2d 231, 235 (5th Cir.1979); Spiegel, Inc. v. FTC, 540 F.2d 287, 294 (7th Cir.1976); Finnerty v. Cowen, 508 F.2d 979, 982 (2d Cir.1974); K. Davis, 1982 Supplement to Administrative Law Treatise Sec. 20.14, at 286-87 [hereinafter cited as Davis Supplement]; Administrative Agencies, 90 Harv.L.Rev. 1682 (1977). But see Rosenthal & Co. v. Bagley, 581 F.2d 1258 (7th Cir.1978); Southern Pacific Transportation Co. v. Public Utilities Commission, 18 Cal.3d 308, 134 Cal.Rptr. 189, 556 P.2d 289 (1976).
 
 
 30
 The doctrine of exhaustion of administrative remedies provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). But see Davis Supplement Sec. 20.11, at 280 ("oft-repeated statement that administrative remedies must be exhausted is false about as often as it is true"). The doctrine must be applied with regard to the purposes that it is designed to serve, McKart, 395 U.S. at 193, 89 S.Ct. at 1662, and with regard to the particular administrative scheme, Salfi, 422 U.S. at 765, 95 S.Ct. at 2466. Specifically, the reasons for applying the doctrine are that (1) courts may never have to intervene if the complaining party allows the agency to discover and correct its own errors, (2) frequent and deliberate flaunting of administrative processes could weaken the effectiveness of the agency by encouraging people to ignore its procedures, see generally McKart, 395 U.S. at 193-95, 89 S.Ct. at 1662-63; Uniroyal, Inc. v. Marshall, 579 F.2d 1060 (7th Cir.1978), and (3) judicial review may be hindered if litigants fail to allow the agency to compile a factual record, exercise its discretion, or apply its expertise. The doctrine is subject to numerous exceptions.
 
 
 31
 Courts have often held that legislative enactments are presumptively valid, until judicially declared otherwise, and that officials should act accordingly. Johnson v. Robison, 415 U.S. 361, 368, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974); Davies Warehouse Co. v. Bowles, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635 (1944). But see Southern Pacific Transp., 134 Cal.Rptr. at 190-91 n. 2, 556 P.2d at 290-91 n. 2. In this case, Denberg informed the Board in his application of his belief that the statute was unconstitutional and the Board indicated that it intended to enforce the provision. Since the agency was bound to follow the statute, and appeared to have every intention of doing so, exhaustion would not have allowed the agency to "discover and correct its own error." A party need not exhaust administrative remedies if to do so would be futile. Porter County Chapter of Izaak Walton League, Inc. v. Costle, 571 F.2d 359, 363 (7th Cir.), cert. denied, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978); Wallace v. Lynn, 507 F.2d 1186 (D.C.Cir.1974); Phillips v. Klassen, 502 F.2d 362 (D.C.Cir.), cert. denied, 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974).
 
 
 32
 Moreover, it is true that the premature judicial intervention in a dispute between an agency and an individual may usurp the "exercise of discretionary powers granted the agency by Congress." McKart, 395 U.S. at 194, 89 S.Ct. at 1663. Administrative agencies are created as separate entities and invested with certain powers and duties. The autonomy of the agency, however, is pertinent only where the function of the agency and the particular decision to be reviewed involve discretionary powers, or require application of special expertise. McKart, 395 U.S. at 194, 89 S.Ct. at 1663. Moreover, any harm to the agency's autonomy must be weighed against the validity of its decisionmaking powers and the equities of the case. Rosenthal, 581 F.2d at 1261 (recognizing need to weigh efficiency against countervailing considerations); Davis Supplement Sec. 20.11, at 280 (recognizing "judicial inclination to decide exhaustion questions on the basis of the equities of whole cases" ).
 
 
 33
 Thirdly, in this case, there was no need for the agency to make a factual record, to exercise its discretion, or to apply its expertise since the agency relied on the unconstitutional statute and could not or would not attempt a constitutional determination of the statute under which it operated. At the time the district court determined whether it had jurisdiction, the underlying facts of this case were undisputed, and the only issue involved a pure question of law. Consequently, this court would not have been aided in its consideration of plaintiffs' claim by either the expertise or fact-finding facilities of the Board. Borden, Inc. v. FTC, 495 F.2d 785, 787 (7th Cir.1974) ("It is well settled that ... administrative remedies may be bypassed ... if ... the issue involved is a strictly legal one not involving the agency's expertise or any factual determinations...."); Metcalf v. Swank, 444 F.2d 1353, 1356 (7th Cir.1971) ("[T]he emerging rule would appear to be that since the administrative remedy cannot resolve the constitutional challenge, exhaustion will not be required unless the administrative action might make judicial determination of the constitutional question unnecessary." (citation omitted)).
 
 
 34
 While a more complete factual record developed by the agency may not have been helpful to the court of appeals, a careful consideration by the district court of the legal issue, as well as the appropriate relief to be granted, could be most helpful. These are the kind of questions that the agency is not competent to decide, but precisely the sort of issues that belong in a district court. If Denberg pursued the path suggested by the majority, this court would have had virtually no record and a constitutional question to face as a court of first impression. This is not the function of a court of review.
 
 
 35
 Moreover, Denberg properly raised a federal question "under any Act of Congress regulating commerce...."[2] Unlike the Social Security Act, the Railroad Retirement Act contains no express prohibition of jurisdiction under other statutory grants. Its provisions, like the remaining portions of the Social Security Act, do no more than state that administrative remedies shall first be exhausted before judicial review is undertaken. Such a statutory requirement of exhaustion, if not accompanied by statutory language or legislative history indicating a clear intent to proscribe all exceptions as in this case, simply reinforces the normal judicial reluctance to decide cases before administrative remedies have run their course.[3]
 
 
 36
 Finally, to have required exhaustion in this case would have resulted in repetitious litigation. Instead of permitting a single suit on behalf of the 5,450 potential beneficiaries, an exhaustion requirement would have forced each of those individuals to file an administrative claim and possibly follow it with an appeal to the appropriate court of appeals, with a potential of 5,450 separate lawsuits although the problem would surely have been resolved before the extreme situation developed.[4] I agree, however, with the majority's statement that the number of claims alone cannot confer jurisdiction on the district court. See Rosenthal, 581 F.2d at 1262. Here, on the other hand, a requirement that plaintiffs exhaust any additional formal procedures before the agency would have involved "a commitment of administrative resources unsupported by an administrative or judicial interest." Squillacote v. International Brotherhood of Teamsters, Local 344, 561 F.2d 31, 39 n. 19 (7th Cir.1977), quoting, Salfi, 422 U.S. at 765-66, 95 S.Ct. at 2466-67.
 
 
 37
 In sum, I would affirm the district court's exercise of jurisdiction pursuant to 28 U.S.C. Sec. 1337. It would have been futile for plaintiffs to have adhered to the administrative procedures and of no value to this court on review. To require the eligible class members to now pursue their claims before the Board will only serve to minimize the value of their claims because of other time limitations in the act on retroactive payments; members will not be able to recover benefits until the Board acts and appeals, if pursued, are exhausted. The eligible class members are now to be penalized because of an unconstitutional statute.
 
 II. Scope of Relief
 
 38
 The majority contemplates that each plaintiff either reapply or apply for the first time to the Board for retroactive benefits and if their applications for relief are denied, appeal to this court under section 5(f). This provides little direction for the numerous class members who have already been notified that they are entitled to benefits. At a minimum, the majority should have remanded the case with instructions that the district court require notice to the class members of the disaster which now belatedly has befallen them and what recourse may remain available. If this situation raises some doubts in their minds about the effectiveness of this system it will be understandable.
 
 
 39
 In order to complete the picture as I see it, I consider some aspects of this case which the majority does not need to reach. However, I would, if we were to accept jurisdiction, tailor the scope of relief to some extent. Denberg, the class representative, filed his application on April 7, 1974, and would have been entitled to benefits from April 7, 1974, but for the operation of the unconstitutional dependency provision in the Act. After the Supreme Court struck down that provision, the district court defined class-wide relief according to the timetable for relief for the named plaintiff. The district court ordered that any spouse who was substantively eligible could apply for benefits in response to the lawsuit and obtain benefits as far back as April, 1974. The problem is not a continuing one as the Board "voluntarily" began granting spouse benefits to husbands, without regard to dependency, after the decision in Goldfarb.
 
 
 40
 The Board notes that the Act provides that annuity payments "shall begin with the month in which eligibility ... was ... acquired, but ... not earlier than the first day of [the] twelfth month before the month in which the application ... was filed (emphasis added). 45 U.S.C. Sec. 231d(a). The Board narrowly concedes, that "it would have been proper for the district court ... to allow back benefits for Mr. Denberg as of April of 1974 and similarly to allow back benefits for other applicants for one year prior to the date of their applications." Appellants' brief, at 16 & n. 14. The Board, however, seeks to deny back payments to the individuals who never individually applied outside of this lawsuit. The Board argues that the award of such benefits is impermissible because a court may not award money damages against the United States in the absence of a statute waiving sovereign immunity. United States v. Testan, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Moreover, the Board contends that retroactive relief is not proper under the test established in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).
 
 A. Sovereign Immunity
 
 41
 Wright v. Califano, 603 F.2d 666 (7th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980), involved entitlement to social security benefits that had been denied because of a dependency requirement which was similar to the provision in this case and was struck down in Califano v. Abbott, 430 U.S. 924, 97 S.Ct. 1540, 51 L.Ed.2d 768 (1977), aff'g, Abbott v. Weinberger, Civ. No. C-74-194 (N.D.Ohio, Feb. 11, 1976). The Social Security Act, like the Act here, provided for retroactive benefits for a period beginning twelve months prior to the date of application, if the applicant was otherwise eligible. 42 U.S.C. Sec. 402(j)(1). In Wright, since the class included only those persons who had applied for and had been denied benefits, the court allowed back payments only for the 12-month period provided in the statute. Wright, 603 F.2d at 669, 671.
 
 
 42
 In Wright, the Secretary argued that spouse benefits under the Social Security Act could be awarded without regard to the dependency test only as of the date of Goldfarb. The government relied on both the equitable doctrines applicable to the retroactive application of Supreme Court decisions, as well as the doctrine of sovereign immunity. This court found that the Social Security Act should be applied in a class action pending at the time of Goldfarb as if the statute had never contained the dependency test. Moreover, this court rejected the Secretary's contention that the award of relief was barred by sovereign immunity.
 
 
 43
 There is no relevant distinction between this case and Wright. The complaint here was pending when Kalina was decided and the class certification relates back. Therefore, all members of the class were entitled to the benefit of Kalina. Moreover, like the court in Wright, 603 F.2d at 670, I find Testan to be "of little relevance." Unlike the plaintiffs in Testan,[5] the plaintiffs in Wright were seeking a judicial determination reversing the Secretary's decision that they were ineligible for benefits under the Social Security Act at the time of their applications. Section 205(g) of that Act authorizes a district court to entertain such an action and expressly authorizes the court "to enter ... a judgment ... reversing the decision of the Secretary ...." 42 U.S.C. Sec. 405(g).
 
 
 44
 In Wright, this court found that reversal of the Secretary's decision as to eligibility necessarily required the award of "retroactive" relief. Moreover, this court noted that the language of the Act was mandatory, allowing up to twelve months of benefits preceding the date of the application. Further, we relied on section 204, 42 U.S.C. Sec. 404, which directs the Secretary to make proper adjustments in finding that Congress intended that a claimant receive the benefits to which he is entitled under the Act, including "retroactive" benefits. The "doctrine of sovereign immunity did not require more." 603 F.2d at 671-72.
 
 
 45
 This lawsuit is more like a judicial reversal of the Board's determination, as in Wright, than a civil suit for money damages. Plaintiffs here seek sums collected largely from the railroads and their employees and allocated specifically for the purpose of making these benefit payments. There is a distinction between money damage awards and the restoration of money improperly exacted or retained. Testan, 424 U.S. at 401, 96 S.Ct. at 954; Davis v. Romney, 490 F.2d 1360, 1371-72 (3d Cir.1974); Griffin v. Harris, 480 F.Supp. 1072, 1074 (E.D.Pa.1979).
 
 
 46
 Moreover, even if sovereign immunity would otherwise bar back payments, the Act contains a sufficient waiver of sovereign immunity. Testan, 424 U.S. at 400, 96 S.Ct. at 954. The Act mandates payment by providing that the spouse "shall ... be entitled to a spouse's annuity ...." (emphasis added). The Act is restricted by the dependency provision, which was "in effect ... read out of the Act" because of the decisions in Kalina and Goldfarb, see Gebbie v. United States Railroad Retirement Board, 631 F.2d 512, 515 (7th Cir.1980), as well as by the substantive requirements and procedural condition that the claimants have applied for benefits. Finally, the Act waives any claim to sovereign immunity by expressly making the denial of an award of benefits subject to review in the courts. See Wright, 603 F.2d at 671 ("Reversal of the ... decision ... necessarily requires the award of 'retroactive' relief").
 
 
 47
 The Board asserts that even if retroactive relief is not barred by sovereign immunity, it is inappropriate under the standards set forth in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). As a general rule, decisions are applied retroactively. Cash v. Califano, 621 F.2d 626, 628 (4th Cir.1980). The party seeking to have a court adopt a rule of nonretroactivity in a particular case has the burden of presenting the necessary equitable basis. In this case, the Board bears that burden.
 
 
 48
 In Chevron Oil Co., the Supreme Court presented an analytical framework to be used in determining whether a decision should not be afforded retroactive application:
 
 
 49
 In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." ... Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."
 
 
 50
 404 U.S. at 106-07, 92 S.Ct. at 355 (citations omitted). The application of these factors is not accomplished through a discrete reference to each separate factor, but by analysis of how they interact with one another. Cash, 621 F.2d at 629.
 
 
 51
 First, it is important to note that both this case and Kalina challenged the same provision of the Act, and that the Denbergs were in court before the Supreme Court affirmed Kalina, striking down the dependency clause. Kalina applied retroactively to permit the petitioner in that case to receive spouse benefits from one year before the date of his application. The only difference between this case and Kalina is that, here, plaintiffs reached the court of appeals through a different procedural path. Since I find that plaintiffs were properly in court, pursuant to 28 U.S.C. Sec. 1337, at the time Kalina was decided, the plaintiffs in this case, as much as the petitioners in Kalina, should be entitled to retroactive relief. See Wright, 603 F.2d at 672 n. 17.
 
 
 52
 Using the factors outlined in Chevron Oil, the Board first claims that the substantive result in Goldfarb "was a departure in the law, not clearly foreshadowed by prior case law." The analysis does not center upon the Court's vote in a particular case, nor upon the general character of the law. The question to be addressed is whether past precedents paved the way for the result in Goldfarb or whether Goldfarb was a departure from an expected result. Cash, 621 F.2d at 630.
 
 
 53
 The results in Goldfarb and Kalina were foreshadowed by the earlier Supreme Court opinions in Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), and Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975). Frontiero held unconstitutional a statute granting spouse benefits to all wives of armed services personnel, but requiring the husbands to prove actual dependency. Frontiero, 411 U.S. at 678-79, 93 S.Ct. at 1766, Weinberger held unconstitutional a Social Security program granting certain survivors benefits only to widows, excluding widowers; the Court found this gender-based distinction to be "indistinguishable from that invalidated in Frontiero," Weinberger, 420 U.S. at 642, 95 S.Ct. at 1230 and held that it discriminated against female wage earners by providing less protection for their survivors than for the survivors of male workers. As the court in Cash noted,
 
 
 54
 The Secretary [of HEW] cannot have been surprised by the result in Goldfarb. Since the opinions in Frontiero and Wiesenfeld were not themselves unanimous, the most the Secretary could have hoped for was a halt in a very clear trend. None of the retroactivity cases have turned on so tenuous a proposition.... Goldfarb clearly did not involve the reversal of an earlier decision, and, in light of Frontiero and Wiesenfeld, the issue presented in Goldfarb was not one of first impression.
 
 
 55
 Cash, 621 F.2d at 630-31. Thus, the first factor in the Chevron analysis weighs against the Board's position.
 
 
 56
 Second, the Board asserts that the retroactive relief ordered by the district court does not further the Act's purpose of compensating the needy for loss of the family's ability to depend on the former wage earner. Rather, it contends that the decision benefited only those who did not need spousal benefits because they had not lost the support of the family "breadwinner." The Board's argument is based upon an unsupported assumption of fact. Moreover, retroactive application furthers the constitutional rule that female wage earners should receive equal protection. "Retroactivity would simply insure that money paid into [the retirement fund] by a female wage earner would be available to her ... spouse on the same terms as money earned and paid by a male wage earner is available to his spouse." Cash, 621 F.2d at 631.
 
 
 57
 Third, in determining whether substantial inequities will result from retroactive application, the Board claims that these benefits amount to a windfall and are not truly needed by the recipients. Moreover, it argues that the district court's order of back benefits will drain the Railroad Retirement Account and the expense would have to be met with funds earmarked for future benefits payments. The absence of dependency by the husband at the time his wife retires cannot be automatically equated with lack of need for supplementary income. While "[a] financial impact alone is an insufficient basis to mandate non-retroactivity," Cash, 621 F.2d at 632, our limitation on the class, see infra, should meet at least some of the Board's concerns. As in Kalina, 541 F.2d at 1210, the solvency of the fund is a matter to be taken up with the Congress. Rather than the benefits being a windfall for the applicant whose spouse made the contributions, it would instead be a windfall for the fund to be able to retain the contributions by reason of its unconstitutional statute.
 
 
 58
 In summary, the doctrine of sovereign immunity does not bar the relief requested. This case is no different than Wright insofar as Wright did not need to reach the Chevron test for retroactive application. In any event, even if Chevron applies, the reasoning of Cash, which rejected nonretroactive application of Goldfarb, indicates that Kalina should not be applied prospectively only.
 
 B. Class Members
 The class, as certified, included:
 
 59
 All past, present and future spouses of retired female railroad employees who have been, are being or will be denied a spouse's annuity under the Act by virtue of 45 U.S.C. Sec. 231a(c)(3)(ii).
 
 
 60
 The parties challenge the scope of the district court's order awarding damages. Plaintiffs contend, and the district court seemed to envision, that all spouses of female retired annuitants, who were substantively entitled to benefits under the Act at any time after April 7, 1975, could recover back benefits as far back as April 7, 1974, regardless of whether they had ever applied for such benefits. In contrast, the Board contends that the class members, at most, are entitled to back benefits for only one year prior to the date of their application.
 
 
 61
 Although the members of this class shared a common question of law, Fed.R.Civ.P. 23(d)(2), each class member possessed an independent monetary claim. Pursuant to its judgment, the district court directed in its final order that the Board send out notices to female employee annuitants and other potential beneficiaries under the class action[6] and set October 15, 1981, as the deadline for filing claims.[7] This procedure is consistent with Rule 23(c)(4) which allows a class action to be maintained "with respect to particular issues," i.e., the constitutionality of the dependency requirement, and then in the same proceeding, to determine damages for the class members either individually or as sub-groups.[8]
 
 
 62
 In this case, the class contains potentially four different groups which should be awarded varying relief. First, there are those individuals who failed to respond to the notice sent out pursuant to the district court's judgment. By setting a deadline of October 15, 1981, the district court presumably intended that only those individuals who responded would receive compensation for previously withheld annuities. In ordering this notice requirement, the district court was exercising its discretion to fashion equitable relief. The barring of recovery in this suit for those other class members who failed to respond has been recognized in several circuits as a reasonable tool for expediting the suit and managing the possible claims. See, e.g., Bing v. Roadway Express, Inc., 485 F.2d 441 (5th Cir.1973); Foster v. City of Detroit, 405 F.2d 138 (6th Cir.1968); see also Quarles v. Philip Morris, Inc., 279 F.Supp. 505 (E.D.Va.1968). Therefore, any individual who did not respond to the court's notice by the deadline should be barred from recovery as a member of the class.
 
 
 63
 Second, there are the applicants who applied for the annuity prior to March 1, 1977, and were denied benefits by virtue of the dependency provision in the Act.[9] To give effect to sections 5(a)(ii) and 2(c)(1) of the Act, the benefits awarded should be based on the date that the individual made application for such benefits. These applicants should be awarded benefits for the statutory period commencing twelve months prior to the date that actual application was made.
 
 
 64
 Third, there are the male spouses, who subsequent to the decision in Goldfarb and Kalina, applied for and were awarded spouse annuities beginning between March 1, 1977 and April 30, 1978, but were denied a full year's retroactive benefit pursuant to section 5(a)(ii) of the Act.[10] These applicants should be awarded benefits for the period commencing twelve months prior to the date of their individual applications.
 
 
 65
 Fourth, plaintiffs' characterization of the class would allow husbands, who never applied for spouse annuities, but responded to this class action, to now make application and receive benefits retroactive as far back as one year prior to April 7, 1975. If this latter group were included to that extent, those spouses who sat on their rights, even after Goldfarb and Kalina made it clear that the dependency provision was unconstitutional, would now receive full benefits. Those individuals would collect payments contrary to the clear wording of the Act, which limits retroactive payments to twelve months prior to the time of application.[11] 45 U.S.C. Sec. 231a(c)(1). Moreover, such an award is contrary to the plain wording of the class certification. The class, as certified, included "All ... spouses ... who have been, are being or will be denied a spouse's annuity...." (emphasis added). In a technical sense, no one can be sure that he has been denied a benefit if he has never applied for it.[12]
 
 
 66
 Plaintiffs argue that excluding spouses who never applied for benefits, but who responded to the court's notice, would be inequitable. The argument is that, at least until the statute was rewritten, a husband who did not receive "at least one-half of his support from his wife," 45 U.S.C. Sec. 231a(c)(3), was not a "spouse" within the meaning of the Act. Plaintiffs contend that since no member of the plaintiff class met the Act's definition of a "spouse," none were "among the persons to whom the filing provisions of the Act applied." As the plaintiffs point out, "[i]n the face of this statutory scheme, no one reading the Act prior to the Supreme Court's affirmance of Kalina [in 1977] could have believed that 'non-spouses' such as plaintiffs were, on the one hand, ineligible for benefits because of their status and yet on the other hand bound to comply with the Act's application and review procedures, which applied only to 'spouses.' "
 
 
 67
 This argument has some merit. What is unacceptable, however, is that these spouses never acted until they received notice from the district court in this case, informing them that the dependency provision was unconstitutional. In light of plaintiffs' argument, however, they should not be denied relief altogether.
 
 
 68
 The benefits accruing to this last group of spouses should be limited. First, an affirmative response to the district court's order should constitute a sufficient application for benefits under the Act. Therefore, the 6,189 spouses who responded to the notices should be treated as if they had applied for benefits as of the October 15, 1981, court deadline.[13] Their retroactive benefits should, therefore, be limited to the twelve months prior to October 15, 1981. All other applicants should receive benefits from one year prior to the date of their application.
 
 
 69
 The overall result of this approach is not to be seen as having any undue impact on the Board. The Board must still examine and pass on the usual merits of each individual claim. Appeals from any individual determination would, presumably, be appealable to this court, after final agency action, not to the district court. That fits properly into the usual track for administrative review. The eligible class members would receive no more than the statute allows, without the unconstitutional provision, but many of those who did nothing more than respond to the district court's deadline notice would receive less than if they had acted more promptly. On the other hand, there is no justification whatsoever for awarding all members of the class, many of whom had previously shown no interest in pursuing their own applications, retroactive benefits back to the year before the named plaintiff filed his own individual claim as the trial court provided. The result of this remedy is a fair, balanced, and practical solution for the Board and the wronged claimants.
 
 
 70
 As I would therefore reverse in part and remand for further proceedings, I respectfully dissent.
 
 
 
 *
 Honorable James F. Foreman, Chief Judge, United States District Court of the Southern District of Illinois, sitting by designation
 
 
 [1]
 The court chose April 7, 1974 as the starting date because, under the provisions of 45 U.S.C. Sec. 231d(a)(ii), Albert Denberg was entitled to receive his annuity beginning one year before the date of his application, which would therefore be April 7, 1974, as his application had been filed on April 7, 1975. The court ordered class-wide relief for the same time period
 
 
 [2]
 In order "to found jurisdiction upon Sec. 1337, it is not requisite that the commerce clause be the exclusive source of federal power; it suffices that it be a significant one." Murphy v. Colonial Federal Savings and Loan Ass'n, 388 F.2d 609, 615 (2d Cir.1967); accord Winningham v. United States Dep't of Hous. and Urban Dev., 512 F.2d 617, 621 (5th Cir.1975); Moreno v. United States Dep't of Agriculture, 345 F.Supp. 310, 313 (D.D.C.1972) (three judge court), aff'd, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). Congress' power to regulate interstate commerce was a significant source of its authority to enact the Railroad Retirement Act. Finnerty v. Cowen, 508 F.2d 979, 983 (2d Cir.1974); California v. Anglim, 129 F.2d 455, 459-460 (9th Cir.), cert. denied, 317 U.S. 669, 63 S.Ct. 74, 87 L.Ed. 537 (1942)
 
 
 [3]
 Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), does not require an opposite conclusion. In Salfi, the Court ruled that, unless waived by the Secretary of Health, Education and Welfare, exhaustion is required when the constitutionality of a provision of the Social Security Act is challenged. That decision, however, turned on the Court's construction of section 405(h) of the Social Security Act. The Social Security Act allows "Any individual, after any final decision of the Secretary made after a hearing to which he was a party" to petition for review in federal district court, just as 45 U.S.C. Sec. 355(q) of the Railroad Retirement Act permits claimants to seek review of Board decisions. The Social Security Act, like 45 U.S.C. Sec. 355(g), also makes "findings and decisions of the Secretary ... binding upon all individuals" and states that "No finding of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 42 U.S.C. Sec. 405(h)
 The Social Security Act, however, then adds a clause that has no parallel in the Railroad Retirement Act. The Social Security Act provides that "No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." (emphasis added). It was upon this clause that the Supreme Court based its holding in Salfi that no challenge of any kind to the Social Security Act could be brought under the grant of general federal question jurisdiction in 28 U.S.C. Sec. 1331. Because the Social Security Act was enacted under the general welfare clause, not pursuant to the commerce power of Congress, 28 U.S.C. Sec. 1337 was unavailable as a source of jurisdiction. Finnerty, 508 F.2d at 983.
 
 
 [4]
 In contrast, this result would not follow from a similar statute, the Social Security Act, which provides for judicial review of the agency action in a district court where a class action can be maintained. See, e.g., Califano v. Yamasaki, 442 U.S. 682, 701-04, 99 S.Ct. 2545, 2557-59, 61 L.Ed.2d 176 (1979). The Railroad Retirement Board decisions are appealed to the court of appeals where a class action would be inappropriate. See Gebbie v. United States Railroad Retirement Board, 631 F.2d 512, 516 n. 9 (7th Cir.1980)
 
 
 [5]
 In Testan, the Court of Claims held that the Classification Act, 5 U.S.C. Sec. 5101, et seq., "gives rise to a claim for money damages [against the United States] for pay lost by reason of ... allegedly wrongful classifications [of federal employees]." 424 U.S. at 399, 96 S.Ct. at 953. Any such claim required a waiver of sovereign immunity. Id. Plaintiffs argued that the Tucker Act, 28 U.S.C. Sec. 1491, constituted a general waiver of sovereign immunity "with respect to any claim involving a constitutional provision or a federal statute ...." Id. at 400, 96 S.Ct. at 954. The Court found the argument unpersuasive, explaining that
 the Tucker Act is merely jurisdictional and [the] grant of a right of action [against the United States] must be made with specificity .... [T]he asserted entitlement to money damages depends upon whether any federal statute "can fairly be interpreted as mandating compensation by the federal government for the damage sustained.
 Id. (citations omitted). Finding no such mandate in either the Classification Act or the Back Pay Act, 5 U.S.C. Sec. 5596, et seq., the Court held that the Court of Claims had no jurisdiction of plaintiffs' claims for reclassification and back pay.
 
 
 [6]
 Pursuant to the district court's judgment, the Board sent 36,564 notices to female employee annuitants and other possible beneficiaries under the class action. The court sent notices to 749 widowers and former husbands of female employee annuitants whom the Board had been able to identify. The court set October 15, 1981, as the deadline for filing claims. As of October 1, 1981, the Board had received 6,189 responses, of which 5,450 claimants were preliminarily determined eligible to receive some retroactive payment. There may be more claimants eligible for benefits if they responded between October 1 and October 15, 1981
 
 
 [7]
 This notice requirement was discretionary, as authorized by Rule 23(d)(2):
 (d) Orders in Conduct of Actions. In the conduct of actions to which this rule applies, the court may make appropriate orders: ... (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; ....
 
 
 [8]
 The Advisory Committee note to the 1966 Amendment to Rule 23 states:
 This provision recognizes that an action may be maintained as a class action as to particular issues only. For example, ... the action may maintain its "class" character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims.
 Strong v. Bucyrus-Erie Co., 481 F.Supp. 760 (D.C.Wis.1979); see also Wright & Miller, Federal Practice and Procedure Sec. 1790 (1972).
 
 
 [9]
 According to the Affidavit of the Acting Director of Retirement Claims, five males applied for a spouse annuity from January 1, 1975, but prior to March 1, 1977
 
 
 [10]
 According to the same affidavit, 1,531 men had applied for an annuity and were denied benefits with a beginning date prior to March 1, 1977
 
 
 [11]
 Section 2(c)(1) of the Act, 45 U.S.C. Sec. 231a(c)(1), provides that as a condition for the receipt of spouse benefits, the claimant must have filed an application. This requirement was not read out of the Act when the unconstitutional dependency provision was struck down. In fact, when Congress amended the statute to exclude the dependency requirement, the application requirement was retained. See 45 U.S.C. Sec. 231a(1)
 
 
 [12]
 The concern that a spouse has applied for benefits appears, at first glance, to be contrary to the discussion in Part II of this dissent finding that plaintiffs need not exhaust their administrative remedies. First, a requirement that a spouse has applied for benefits in order to recover from the time of substantive eligibility is not contrary to the conclusion that the class members need not have exhausted all administrative remedies in order to bring this suit. Moreover, questions of jurisdiction must be kept separate from questions of relief. Jurisdiction is a question of law and a court may not confer jurisdiction upon itself. In contrast, however, relief is a question of equity and a court can exercise a great deal of discretion in molding the remedy
 
 
 [13]
 The date of October 15, 1981, is selected to assist in the orderly disposition of the case